The STATE of Ohio, Appellant,

v.

BURK, Appellee.

[Cite as *State v. Burk,* 164 Ohio App.3d 740, 2005-Ohio-6727.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 86162.

Decided Dec. 20, 2005.

William D. Mason, Cuyahoga County Prosecutor, and Matthew E. Meyer, Assistant County Prosecutor, for appellant.

Robert L. Tobik, Cuyahoga County Public Defender, and John T. Martin and David McGee, Assistant Public Defenders, for appellee.

Ohio State Legal Services Association and Michael R. Smalz, and Legal Aid Society of Cleveland and Alexandria M. Ruden, for amici curiae ACTION OHIO Coalition for Battered Women, Ohio Domestic Violence Network, and Ohio NOW Education and Legal Fund.

Camilla B. Taylor and Joy B. Savren, for amicus curiae Lambda Legal Defense and Education Fund, Inc.

Carrie L. Davis, for amicus curiae American Civil Liberties Union of Ohio Foundation, Inc.

---

MICHAEL J. CORRIGAN, Judge.

{¶ 1} In November 2004, the people of Ohio resoundingly approved the Ohio constitutional amendment known as Issue 1. Issue 1 amends the Ohio Constitution by defining marriage as follows:

{¶ 2} "Only a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions. This state and its political subdivisions shall not create or recognize a legal status for relationships

of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage." Section 11, Article XV, Ohio Constitution.

{¶ 3} Approximately three and one-half months after Issue 1 went into effect, the trial court analyzed Ohio's domestic-violence statute, R.C. 2919.25, in light of Issue 1 when appellee, Frederick Burk, was indicted on one count of domestic violence for causing or attempting to cause harm to Barbara Sanders, "a family or household member." R.C. 2919.25(A). Burk moved the trial court to dismiss the charge, alleging that R.C. 2919.25 is unconstitutional in light of Issue 1. Despite the state's arguments to the contrary, the trial court granted in part Burk's motion to dismiss, reasoning that because Ohio's domestic-violence statute protects or "recognizes" unmarried people who live as spouses, it is incompatible with Issue 1 and, thus, unconstitutional. The trial court dismissed Burk's domestic-violence charge and amended the indictment to the lesser included charge of assault. The state now appeals as of right. See R.C. 2945.67(A); *State v. Hayes* (1986), 25 Ohio St.3d 173, 175, 25 OBR 214, 495 N.E.2d 578 (allowing "the state a direct appeal whenever the trial court grants a motion to dismiss all, or any part of, an indictment").

{¶ 4} The state asserts three assignments of error, yet the gravamen of the appeal is that the trial court erred in finding Ohio's domestic-violence statute unconstitutional. In particular, the state argues that the trial court failed to give constitutional deference to Ohio's domestic-violence statute, that the trial court misapplied Issue 1 to Ohio's domestic-violence statute, and that the trial court erred in finding that Ohio's domestic-violence statute recognizes for unmarried people a legal status that intends to approximate the design, quality, significance, or effect of marriage. We hold that Ohio's domestic-violence statute is neither incompatible with, nor unconstitutional in light of, Issue 1. For the following reasons, we reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.

## I. Ohio's Domestic Violence Statute

{¶ 5} R.C. 2919.25 provides as follows:

{¶ 6} "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.

{¶ 7} " * * *

{¶ 8} "(F) As used in this section and sections 2919.251 [2919.25.1] and 2919.26 of the Revised Code:

{¶ 9} "(1) 'Family or household member' means any of the following:

{¶ 10} "(a) Any of the following who is residing or has resided with the offender:

{¶ 11} "(i) A spouse, a person living as a spouse, or a former spouse of the offender;

{¶ 12} "(ii) A parent or a child of the offender, or another person related by consanguinity or affinity to the offender;

{¶ 13} "(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.

{¶ 14} "(b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent.

{¶ 15} "(2) 'Person living as a spouse' means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question."

## II. Presumption of Constitutionality

{¶ 16} It is well settled that "an enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *Johns v. Univ. of Cincinnati Med. Assoc., Inc.*, 101 Ohio St.3d 234, 2004-Ohio-824, 804 N.E.2d 19, ¶ 34. This presumption of constitutionality attaches regardless of whether the newly enacted statute challenges an existing provision of the Ohio Constitution or whether the existing statute is alleged to be in conflict with the new constitutional amendment. Here, the trial court ignored the time-honored constitutional analysis that is required and found that Ohio's domestic-violence statute was not entitled to a presumption of constitutionality because it was not the statute that "create[d] the alleged conflict, but rather the subsequent and superceding constitutional provision." This holding was erroneous.

{¶ 17} The trial court was required to give a reasonable construction to Issue 1, the subsequent constitutional amendment, and Ohio's domestic-violence statute "so that both may stand." *State ex rel. Smead v. Union Twp.* (1858), 8 Ohio St. 394, 399. The trial court found that the only reasonable construction is that Ohio's domestic-violence statute recognizes violence between unmarried people who live together as spouses, a relationship that "approximates the design, qualities, significance or effect of marriage." Although the trial court stated that it was "fully aware that judicial restraint compels it to avoid deciding constitutional issues 'unless absolutely necessary,' " it disregarded that restraint by single-handedly concluding that Ohio's domestic-violence statute and Issue 1 "cannot be

rendered compatible without distorting the plain meaning and clear intent of one or the other."

### III.   Both Issue 1 and R.C. 2919.25 May Stand

{¶ 18} Here, reasonable interpretation "so that both may stand" exists. The first sentence of Issue 1 clearly defines marriage in Ohio as a union between one man and one woman.   A man will not be considered legally married in Ohio if he is "married" to a man or to more than one woman.   The second sentence of Issue 1 specifically prohibits Ohio and its political subdivisions from creating or recognizing any "legal status" that "intends to approximate the design, qualities, significance or effect of marriage."   Given its plain meaning, the second sentence is more than just a reiteration of the first— indeed, it is a guarantee that the state will not create or recognize the *legal status* of civil unions, domestic partnerships, or other relationships that mimic marriage.   See *State v. Newell,* Stark App. No. 2004CA00264, 2005-Ohio-2848, 2005 WL 1364937, ¶ 43 (agreeing with the state's argument that the intent of Issue 1 "was to prohibit same sex marriage" and "was specifically adopted in response to the decision of the Massachusetts[ ] Supreme Court in *Goodridge v. Department of Public Health* (2003), 440 Mass. 309, 798 N.E.2d 941 that the Massachusetts[ ] law limiting the protections, benefits and obligations of civil marriage to individuals of opposite sexes lacked a rational basis and violated state constitutional equal protection principles").

{¶ 19} Erroneously, the trial court concluded that Ohio's domestic-violence statute confers upon cohabiting, unmarried individuals that approximates "the design, qualities, significance or effect of marriage" simply because the phrase "family or household member" as defined in that statute includes "a person living as a spouse."   Ohio's domestic-violence statute, however, does not guarantee the right to be free from family violence that stems only from the legal status of marriage, nor is domestic violence a crime that is born out of marriage alone.

{¶ 20} As explained by the Cleveland Municipal Court in *Cleveland v. Knipp* (Mar. 10, 2005), Cuyahoga Cty. M.C. No. 2004 CRB 039103, 2005 WL 1017620, the legislature, in creating the definition "living as a spouse," did not intend "to bestow upon unmarried individuals, or to recognize in them, a legal status that approximates the design, qualities, significance or effect of marriage."   In *Knipp,* the court denied the motion to dismiss the charge of domestic violence, holding that the legislature's "primary intent in crafting the state's domestic violence statutes was to provide protection to *all* persons who cohabit, regardless of their marital status."   (Emphasis in original.)

{¶ 21} *Knipp* further reasoned that the legislature "merely acknowledged the reality that, with or without official approval, human beings in Ohio, as elsewhere,

will come together in a variety of loving relationships that will sometimes turn violent. Ohio's domestic violence laws assure that all of its citizens who require the special protections that the circumstances of domestic violence create will have access to the resources of their government to enhance their safety. This assurance can be, and has been, made, even to unmarried couples, without the extension of the status or benefits of marriage."

{¶ 22} In fact, Ohio's domestic-violence statute broadly encompasses many individuals, including the parent or child of the offender or another person related by blood to the offender, and the parent or child of a spouse, a person living as a spouse, or another person related by blood or affinity to a spouse or person living as a spouse. R.C. 2919.25(F)(1)(a)(ii) and (iii). Likewise, Ohio courts have consistently applied the domestic-violence statute to same-sex couples, reasoning that it is not the sexual relationship of the parties that determines whether their factual situation falls within the definitions covered by Ohio's domestic-violence statute. See *State v. Hadinger* (1991), 61 Ohio App.3d 820, 823, 573 N.E.2d 1191. Although sexual intercourse is a "persuasive indicium" of cohabitation, it is not conclusive. Instead, the factual determination for domestic-violence purposes has always been whether the parties have cohabited. Id.

{¶ 23} As the Franklin County Court of Common Pleas stated in *State v. Rodgers,* 131 Ohio Misc.2d 1, 2005-Ohio-1730, 827 N.E.2d 872 ¶ 14:

{¶ 24} "[W]hile 'cohabitation' defines a relationship between people, that status is factual not legal. 'Cohabitant' is therefore not a legal status, let alone a legal status that 'intends to approximate the design, qualities, significance or effect of marriage' within the meaning of [Issue 1]."

{¶ 25} *Knipp* further explained:

{¶ 26} "These definitions are not terms of art. They are descriptions designed to assist fact-finders in discovering whether the unique circumstances surrounding individual relationships can be categorized in such a way as to establish the existence of domestic violence. The courts are of accord that there need not be an actual assertion of marriage, for instance, and that cohabitation can be based entirely on acts of living together without sexual relations." (Citations omitted.) Cuyahoga Cty. M.C. No. 2004 CRB 039103.

{¶ 27} In considering what constitutes cohabitation, the Ohio Supreme Court held in *State v. Williams* (1997), 79 Ohio St.3d 459, 465, 683 N.E.2d 1126:

{¶ 28} "[T]he essential elements of 'cohabitation' are (1) sharing of familial or financial responsibilities and (2) consortium. * * * Possible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace,

comfort, aid of each other, friendship, and conjugal relations. These factors are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact."

{¶ 29} For instance, in *Williams,* 79 Ohio St.3d 459, 683 N.E.2d 1126, the court noted that because the defendant and the victim fought over money problems, the two spent most of their nights together at defendant's residence, and at one time the victim thought she might be pregnant with defendant's child, they were cohabitants and, thus, "family or household members" as defined by Ohio's domestic-violence statute. Id. The determination of whether the two are "family or household members" turns on the particular facts of the couple's relationship, not on their legal status.

{¶ 30} For instance, even though Ohio law abolished common-law marriage on October 10, 1991, de facto evidence of common-law marriage does not preclude a domestic-violence charge should violence occur between the two individuals. See R.C. 3105.12(B)(1). Simply because the two cohabit and hold themselves out as married does not confer the legal status of marriage upon the individuals. See R.C. 3105.12(A). Instead, it is the factual relationship of a common-law marriage that renders each party a "family or household member" for the purposes of Ohio's domestic-violence statute.

{¶ 31} Thus, for the purposes of this appeal, the threshold determination of whether any individuals fall within the definition of "family or household member" is whether they reside with or have resided with the offender. R.C. 2919.25(F)(1)(a). For example, if a man and a woman who are legally married have never resided with each other in any fashion, they do not fall within the definition of "family or household member" and, thus, any violence between them may be assault, but it certainly is not considered domestic violence under Ohio law. Because Ohio's domestic-violence statute is predicated upon the factual determination of cohabitation—and not the legal determination of marriage—both Issue 1 and Ohio's domestic violence statute "may stand."

{¶ 32} We hold that Ohio's domestic-violence statute, insofar as it defines "family or household member" to include unmarried individuals who live as spouses, is constitutional and coexists in harmony with Issue 1. As a result, the trial court's decision granting in part Burk's motion to dismiss is reversed, Burk's original indictment for domestic violence is reinstated, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

BLACKMON, A.J., and CALABRESE, J., concur.