{¶ 10} I dissent from the majority's conclusion that Ohio's domestic violence statute, R.C. 2919.25, does not violate the Ohio Constitution, Art. XV, § 11, referred to as the "Defense of Marriage" amendment (the "amendment").
 {¶ 11} The majority, in abbreviated fashion, reaches its conclusion that R.C. 2919.25 is constitutional by relying on the authority of State v. Burk, Cuyahoga App. No. 86162,2005-Ohio-6727. I believe, however, that the analysis of Burk
is flawed. I, therefore, disagree with the conclusion that Burk
reached.
 {¶ 12} In determining whether R.C. 2919.25 conflicts with the amendment, Burk posits that
"an enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible."
Burk, ¶ 16, citing Johns v. Univ. of Cincinnati Med. Assoc.,Inc., 101 Ohio St.3d 234, 2004-Ohio-824, ¶ 34, 804 N.E.2d 19.
 {¶ 13} While I agree with a presumption of statutory constitutionality, I do not agree that in determining whether the statute and the amendment conflict, the next step is "to give a reasonable construction * * * `so that both may stand.'" Burk,
¶ 17- ¶ 18, citing State ex rel. Smead v. Union Twp. (1858),8 Ohio St. 394, 399.[1] Burk and the majority in the case at bar apply the wrong rule of construction.
 {¶ 14} The Ohio Supreme Court has provided the proper method of determining whether a state statute conflicts with a state constitutional provision:
It is not the province of a court to write constitutions or to give to the language used such forced construction as would warp the meaning to coincide with the court's notion of what should have been written therein. On the contrary, the language used must be given its usual and ordinary meaning.
In the case of Slingluff v. Weaver, 66 Ohio St. 621, it was held by this court, in the second paragraph of the syllabus, that:
"The intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguityand doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort toother means of interpretation. The question is not what did thegeneral assembly intend to enact, but what is the meaning of thatwhich it did enact. That body should be held to mean what it hasplainly expressed, and hence no room is left for construction."
This applies with equal force to the construction of a constitutional provision. If the result reached by the observance of this first and most important canon of construction falls short of the purpose and intent of the electors, the remedy is by amendment. (Emphasis added.)
Cleveland Tel. Co. v. Cleveland (1918), 98 Ohio St. 358,368-369, 121 N.E. 701.
 {¶ 15} In the case at bar, the only term in the domestic violence statute this court is concerned with is "cohabiting."[2] Though the term is not defined in the statute, it has been defined by the Ohio Supreme Court as follows: * * * the essential elements of "cohabitation" are (1) sharing of familial or financial responsibilities and (2) consortium. R.C. 2919.25(E)(2) and related statutes. Possible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations. These factors are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact.
State v. Williams, 79 Ohio St.3d 459, 465, 1997-Ohio-79,683 N.E.2d 1126. Under Williams, "domestic violence arises out of the nature of the relationship itself, rather than the exact living circumstances of the victim and perpetrator." Id., 1129.
 {¶ 16} Williams underscores the purpose of most domestic violence statutes: to acknowledge that an assault on a family or household member is more serious than an assault on a stranger. By enacting domestic violence statutes, legislative bodies intend to protect persons who are in a certain type of "relationship" with one another rather than persons who are simply strangers.
 {¶ 17} In prosecuting an offense under the statute, the state must prove the defendant caused or attempted to cause "physical harm to a family or household member." The statute defines "family or household member" as someone who is residing or has resided with the defendant and who is "[a] spouse, a person living as a spouse, or a former spouse of the offender." R.C.2919.25(F)(1)(a)(i)-(iii). At (F)(2), the statute further defines "person living as a spouse" as a person "who otherwise is cohabitating or has cohabitated with the offender within 5 years prior to the date of the alleged commission of the act in question."
 {¶ 18} On this point, the language of the statute is unambiguous. The statute expressly protects people living together as if they were spouses, that is, as if they were legally married. I believe the statute's language "living as a spouse" is clear. Moreover, the Ohio Supreme Court in Williams
expressly clarified what it means if a person is living as a spouse.
 {¶ 19} As to "cohabitating," 71 A.L.R.5th 285 is particularly helpful in understanding this word for purposes of domestic violence statutes. Consistent with the Williams requirement that the nature of the relationship be the primary indicia in determining whether persons have or are cohabiting, the majority of courts discussed in the A.L.R. article also place emphasis on the type of relationship that exists or existed between persons at the time of the domestic offense.
 {¶ 20} The A.L.R. article cites, for example, the case ofState v. Yaden, (1997), 118 Ohio App.3d 410, 692 N.E.2d 1097, 71 A.L.R.5th 749, which discusses how other jurisdictions understand the term "cohabitation":
In Alabama, cohabitation means "some permanency of relationship coupled with more than occasional sexual activity between the cohabitants." In California, cohabitation means "an unrelated man and woman living together in a substantial relationship manifested principally by a permanence, or sexual, or amorous intimacy." In Delaware, the alimony statute defines cohabitation as "regularly residing with an adult of the same or opposite sex, if the parties hold themselves out as a couple, and regardless of whether the relationship confers a financial benefit." The Delaware Supreme Court has defined cohabitation as an "arrangement existing when two persons live together in a sexual relationship when not legally married." In New Jersey, cohabitation is "generally residing together in a common residence * * * where they generally engage in some, but not necessarily all of the following: meals taken together at the residence; departing from and returning to the residence of the other for employment and/or social purposes; maintaining clothing at the other's residence; sleeping together at the residence, or residence of the other; receiving telephone calls at the residence or residence of the other." The court also cited the following definitions: in Illinois, "living together as husband and wife"; in Iowa, "a significant live-together relationship"; in Kentucky, "the mutual assumption of those marital rights, duties, and obligations which are usually manifested by married people including but not necessarily dependent on sexual relations"; in Maryland, "living together as husband and wife without a legal marriage having been performed"; in North Carolina, "living together as man and wife, though not necessarily implying sexual relations"; in South Carolina, "living together in the same house"; in Texas, "dwelling or living together; community of life," or "doing things ordinarily done by spouses"; and in Virginia, "living together permanently or for an indefinite period and assuming the duties and obligations normally attendant with a marital relationship."
Yaden, 414, quoted in 71 A.L.R.5th, *4.
 {¶ 21} The A.L.R. article also discusses how the federal domestic violence statutes use the term "cohabitation."
When used as a preposition in statutes generally, and specifically as used in Violence Against Women Act (VAWA) provision defining "intimate partner" as a person who has cohabited with the abuser "as a spouse," the word "as" means in the role, capacity, or function of, and in a manner similar to, or like. 18 U.S.C.A. § 2261(a),[3] 2266(A). U.S. v.Barnette, 211 F.3d 803 (4th Cir. 2000). 71 A.L.R.5th, *3.
 {¶ 22} Because of the magnitude of legal authority defining the term "cohabitation" for purposes of different domestic violence statutes, I must dissent from the majority opinion.
 {¶ 23} As noted by Williams, cohabitation means the "sharing of familial or financial responsibilities and
consortium." Id., 465, emphasis added. When two unmarried people share financial responsibilities and engage in consortium with one another, what else have we done historically as a society other than to recognize that relationship as one that possesses the "design, qualities, significance or effect of marriage." See,State v. Ward, Green App. No. 2005-CA-75, 2006-Ohio-1407, ¶ 31- ¶ 36.
 {¶ 24} When two unmarried people are deemed cohabitants under the domestic violence statute, they attain a legal status: each may prosecute the other person for an act of violence under the statute. It is a crime quite different from a general assault, precisely because of the special intimacy of the parties.
 {¶ 25} For the foregoing reasons, I would find R.C. 2919.25
unconstitutional because it conflicts with the Ohio Constitution, Art. XV, § 11.
[1] For a very scholarly critique of the standard of review used in Burk and purportedly applied in Smead, supra, see Judge Fain's analysis in State v. Ward, Green App. No. 2005-CA-75, 2006-Ohio-1407. Also, see, the similarly rigorous analysis originally provided in the common pleas court opinion by Judge Friedman in State v. Burk (Mar. 23, 2005) Cuyahoga Common Pleas No. CR-462510.
[2] Common law marriages were abolished in Ohio in 1991.
[3] "§ 2261. Interstate domestic violence
(a) Offenses.
(1) Travel or conduct of offender. A person who travels in interstate or foreign commerce or enters or leaves Indian country or within the special maritime and territorial jurisdiction of the United States with the intent to kill, injure, harass, or intimidate a spouse, intimate partner, or dating partner, and who, in the course of or as a result of such travel, commits or attempts to commit a crime of violence against that spouse, intimate partner, or dating partner, shall be punished as provided in subsection (b).
(2) Causing travel of victim. A person who causes a spouse, intimate partner, or dating partner to travel in interstate or foreign commerce or to enter or leave Indian country by force, coercion, duress, or fraud, and who, in the course of, as a result of, or to facilitate such conduct or travel, commits or attempts to commit a crime of violence against that spouse, intimate partner, or dating partner * * *."