The **STATE** of Ohio, Appellant and Cross–Appellee,

v.

**KVASNE**, Appellee and Cross–Appellant.

[Cite as *State v. Kvasne,* 169 Ohio App.3d 167, 2006-Ohio-5235.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 86805 and 86915.

Decided Oct. 5, 2006.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Colleen Reali, Assistant Prosecuting Attorney, for appellant and cross-appellee.

Thomas A. Rein, for appellee and cross appellant.

---

ROCCO, Judge.

{¶ 1} Following a trial to the bench, appellant and cross-appellee, the state of Ohio, appeals from that part of the trial court's order that dismissed the first count of the indictment against appellee and cross-appellant, Joseph Kvasne. The court found that in light of the Ohio Constitution's new Article XV, Section 11 ("Issue I"), the state could not pursue a conviction against Kvasne for the offense of domestic violence.

{¶ 2} The state argues that the trial court wrongly dismissed the first count of the indictment, because R.C. 2919.25 remains constitutional in spite of the passage of Issue I.

{¶ 3} Kvasne has filed a cross-appeal to challenge the state's appeal and, further, to challenge both his conviction on the second count of the indictment for abduction and the sentence imposed therefor.

{¶ 4} He initially asserts that the state's appeal should be dismissed. More-over, he claims in his five cross-assignments of error that his abduction conviction should be reversed because it is sustained by neither sufficient evidence nor the weight of the evidence in that abduction is not a lesser included offense of the crime alleged in the indictment, kidnapping. He also claims that the trial court failed to permit him to present the testimony of one of his defense witnesses. He additionally claims that his sentence of more than the minimum term is unsupported in the record.

{¶ 5} After a review of the record, this court agrees with the state's argument. This court previously has held that R.C. 2919.25 is neither incompatible with Issue I nor unconstitutional in light of it. *State v. Burk,* 164 Ohio App.3d 740, 2005-Ohio-6727, 843 N.E.2d 1254; *State v. Douglas,* Cuyahoga App. Nos. 86567 and 86568, 2006-Ohio-2343, 2006 WL 1304860. Consequently, that portion of the trial court's order is reversed, and the cause is remanded for further proceedings.

{¶ 6} Kvasne's assertions and claims lack merit. His conviction for abduction and the sentence imposed for that conviction, therefore, are affirmed.

{¶ 7} This case results from an altercation that occurred between Kvasne and the victim, D.J.[1] D.J. testified that beginning in the summer of 2003, she and Kvasne shared a romantic relationship as "boyfriend"[2] and girlfriend. Although Kvasne worked most weekdays at a job in Michigan, he returned to Cleveland on weekends to live with her in her home.

{¶ 8} The romantic portion of the relationship ended in December 2004, but Kvasne continued to live there. D.J. indicated that pursuant to their usual living arrangement, she continued to pay most of the expenses, but he contributed to the household by giving her money for incidentals and by making home repairs.

{¶ 9} In February 2005, D.J. asked Kvasne to find another place to live "by springtime." She testified that on the evening of February 5, he arrived at home angry. Apparently, he had been thinking about her request but "couldn't accept that." He indicated that he believed she "had taken advantage of him because he put the furnace in," which had cost him a significant amount of money.

{¶ 10} D.J. testified that although she attempted to walk away from the argument, Kvasne started to "push [her] around." After she nearly fell into a piece of furniture, he grabbed her arms and shoved her onto her knees. She retaliated by "grabb[ing] him by the crotch of his pants." He "jumped backwards" to avoid her hands, then forcefully "poked" her with all the fingers of his hand, jamming them as a unit into the side of her face in the area of her jaw.

{¶ 11} When she indicated that his action hurt, he stated that it "was just a poke"; he proceeded to demonstrate that he could have done more damage if he wished by throwing her down, straddling her, and with his left hand, pinning her arms to the floor over her head. He then "slapped [her] in the side of [her] face with his right hand."

{¶ 12} D.J. threatened to call the police. Kvasne responded that he would remain where he was until she withdrew her threat. After about a minute, she

---

1. Pursuant to this court's policy, the female victim is referred to only by her initials.

2. Quotes indicate trial testimony.

relented. At that point, he permitted her to stand. In order to keep peace with him thereafter, she acted as if the argument was over.

{¶ 13} A few days later, when Kvasne resumed working, she removed his personal belongings from her home and changed the locks so that he could not use his key. Furthermore, she decided to file a criminal complaint against him so that he would not seek to return.

{¶ 14} Kvasne eventually was indicted on two counts. Count one charged him with domestic violence in violation of R.C. 2919.25; count two charged him with kidnapping in violation of R.C. 2905.01. The indictment contained both a notice of prior conviction and a repeat-violent-offender specification for his 1985 conviction for the crime of voluntary manslaughter.

{¶ 15} Kvasne entered a written waiver of his right to a jury trial; therefore, the trial court acted as the trier-of-fact. Kvasne stipulated to the fact of his prior conviction. At the conclusion of the proceeding, the trial court dismissed count one, finding that under the circumstances of the facts proved in the case, Ohio's "new constitutional amendment" precluded a conviction of Kvasne pursuant to R.C. 2919.25. As to count two, over his objection, the court found Kvasne not guilty of kidnapping, but guilty of the "lesser included" offense of abduction.

{¶ 16} The court ultimately sentenced Kvasne on his conviction for abduction to a two-year prison term.

{¶ 17} Pursuant to R.C. 2945.67(A), the state filed an appeal of the trial court's dismissal of count one of the indictment against Kvasne. Kvasne has filed a cross-appeal, in which he claims that the trial court actually acquitted him of the domestic-violence charge. Additionally, he challenges his conviction for abduction and the sentence imposed.

{¶ 18} In its appeal, the state presents the following assignment of error:

{¶ 19} "I. The trial court erred when it dismissed Count One of the indictment based on Ohio Constitution Section XV, Article 11 [sic], Issue I."

{¶ 20} Kvasne counters the state's assignment of error as follows:

{¶ 21} "A. This court should dismiss the state's appeal because the State of Ohio has not properly appealed the trial court's decision as the state does not have an appeal as of right."

{¶ 22} The state argues that the trial court erred in dismissing the charge of domestic violence based upon its belief that under the facts of this case, R.C. 2919.25 could not constitutionally be applied to Kvasne because he and D.J. were not married. This court agrees.

{¶ 23} In *Burk,* 164 Ohio App.3d 740, 2005-Ohio-6727, 843 N.E.2d 1254, ¶ 32, and more recently in *Douglas,* 2006-Ohio-2343, 2006 WL 1304860, ¶ 6, this court has held that Issue I does not render R.C. 2919.25 unconstitutional when applied to unmarried persons of opposite sexes who "cohabit."

{¶ 24} In this court's view, the domestic-violence statute does not "create or recognize a legal status for relationships of unmarried individuals"; rather, the *legal* status remains the same, i.e., one is the witness to a crime and one is the defendant. *Burk,* 164 Ohio App.3d 740, 2005-Ohio-6727, 843 N.E.2d 1254, ¶ 32; cf., *Douglas,* 2006-Ohio-2343, 2006 WL 1304860, ¶ 24. This legal status cannot even remotely be said to be "intended to approximate the design, qualities, significance, or effect of marriage." *Burk,* 164 Ohio App.3d 740, 2005-Ohio-6727, 843 N.E.2d 1254, ¶ 25; cf. *State v. Logsdon,* Seneca App. No. 13–05–29, 2006-Ohio-2938, 2006 WL 1585447. It is not different from the status conferred upon the parties by the other statutes that forbid the same type of conduct— that of harming another individual.

{¶ 25} The same conduct had been proscribed prior to the enactment of the domestic-violence statute. The Ohio legislature simply has determined with the passage of the domestic-violence statute that the state has a legitimate interest in protecting the "family," which consists of persons who share a life in the same household. This is a constitutional exercise of its authority.

{¶ 26} Kvasne counters with the assertion that the trial court in this case did not simply dismiss the charge, but, rather, acquitted him of it. The record read in its entirety, however, does not support his assertion.

{¶ 27} In considering Kvasne's motion for acquittal at the close of the evidence, the trial court stated that "[p]rior to announcing [its] verdict on count two" of the indictment, it wanted the record to reflect that in its view, the state provided evidence in its case-in-chief that only barely met the elements to prove the crime of domestic violence.[3] Nevertheless, acquittal was not the appropriate action; instead, "under the Court's reading of the law, [it could]n't do that" because "as far as the Court [was] concerned," an acquittal of Kvasne was "the easy way out."

{¶ 28} The court explained its reasoning at some length, indicating that because the evidence demonstrated that Kvasne and the victim were unmarried, "given that the voters of the [S]tate of Ohio have chosen" not to "recognize" such a relationship pursuant to the "new constitutional amendment," * * * count one

---

**3.** This court does not necessarily agree with the trial court's assessment. On that point, the facts in this case compare more favorably with those set forth in *State v. Williams* (1997), 79 Ohio St.3d 459, 683 N.E.2d 1126, than those confronted by this court in *State v. Church,* Cuyahoga App. No. 85582, 2005-Ohio-5198, 2005 WL 2401487.

[was] *dismissed, prior to* [the] announc[ement of the] verdict."[4] (Emphasis added.)

{¶ 29} At one point during the court's foregoing discourse, it misspoke, using the words that it was "ordering an acquittal." The court clearly intended, however, to dismiss the charge of domestic violence on the basis of its view that the offense could not be supported under the new constitutional amendment. This is further evidenced by the court's journal entry, which states that count one was "nolled," a word that connotes the intent to dismiss rather than to acquit. Since the court speaks only through its journal entry, Kvasne's counter-argument is rejected.

{¶ 30} Based upon the foregoing, the state's assignment of error is sustained.

{¶ 31} Kvasne presents the following cross-assignments of error:

{¶ 32} "I. The state failed to present sufficient evidence to sustain a conviction.

{¶ 33} "II. Appellee's conviction is against the manifest weight of the evidence.

{¶ 34} "III. The trial court erred by finding appellee guilty of abduction as a lesser-included [sic] of kidnapping.

{¶ 35} "IV. The trial court erred by not enforcing appellee's subpoena of the police officer as a defense witness after he appeared the previous day with his subpoena.

{¶ 36} "V. The trial court erred in sentencing appellee to more than the minimum prison sentence when he had not previously served a prison term."

{¶ 37} In his first four cross-assignments of error, Kvasne claims that his conviction for abduction should be reversed for four reasons, which will be addressed in logical order.

{¶ 38} Initially, he argues that the trial court violated his right to present a defense when it refused to issue a bench warrant in order to compel the presence at trial of a police officer who received a subpoena from Kvasne to testify.[5] This argument lacks merit.

{¶ 39} The record reflects that the officer appeared in response to Kvasne's subpoena, but his testimony was not required that day; therefore, Kvasne's trial counsel released him. Moreover, when defense counsel brought the matter to the

---

4. Kvasne argues that the trial court's decision to dismiss the charge on constitutional grounds bars any retrial on that count. His argument is rejected based upon *State v. Calhoun* (1985), 18 Ohio St.3d 373, 18 OBR 429, 481 N.E.2d 624, syllabus.

5. The police officer was the person to whom D.J. made her original complaint.

trial court's attention, counsel further admitted that the subpoena had not been personally served on the officer.

{¶ 40} The trial court correctly noted that personal service of the original subpoena is required in order for the court to issue a bench warrant. *State v. Wilcox* (June 11, 1992), Cuyahoga App. Nos. 60851 and 60886, 1992 WL 136482. The trial court then continued the matter to the following day for counsel to seek the witness's attendance.

{¶ 41} Under these circumstances, the trial court neither abused its discretion nor denied Kvasne his right to present a defense. Id. Accordingly, his fourth cross-assignment of error is overruled.

{¶ 42} Kvasne next argues in his first, second, and third cross-assignments of error that his conviction for abduction was improper because it is neither a lesser included offense of kidnapping nor supported by sufficient evidence and the weight of the evidence. These arguments are unpersuasive.

{¶ 43} This court recently acknowledged that "there is a conflict as to whether abduction is a lesser included offense of kidnapping." *State v. Breeden*, Cuyahoga App. No. 84663, 2005-Ohio-510, 2005 WL 315370, ¶ 63. Therein, this court cited, inter alia, *State v. Morgan*, Cuyahoga App. No. 81508, 2004-Ohio-6304, 2004 WL 2677456, for the proposition that abduction cannot be considered a lesser included offense,[6] whereas *State v. Ogletree*, Cuyahoga App. No. 79882, 2002-Ohio-4070, 2002 WL 1821958, held precisely the opposite.

{¶ 44} It must first be noted that none of the more recent appellate decisions has recognized that the Ohio Supreme Court previously determined the issue. In *State v. Maurer* (1984), 15 Ohio St.3d 239 at 270–271, 15 OBR 379, 473 N.E.2d 768, the Supreme Court considered the two offenses pursuant to Crim.R. 31(C) and R.C. 2945.74, both of which specifically permit a defendant to be convicted of a lesser included offense. The Supreme Court held that Maurer, who had been indicted for kidnapping, under the circumstances of the case nevertheless "was not entitled to an instruction on the *lesser included offense* of abduction." (Emphasis added.)

---

6. The opinion in this case, however, notes a reluctance to come to this conclusion, stating that such a conclusion was "compelled." Citing the Ohio Supreme Court's decision in *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, *Morgan* commented that the application of the *Rance* test to the facts led to a "troubling result," since the defendant had not been indicted for using "deception in the commission of the offense, and the facts presented at trial would not permit any conclusion that deception had been used." Nevertheless, even though the defendant thereby escaped any accountability for his conduct, the appellate court held itself "bound by the decisions of a higher court and thus ha[d] no choice" but to vacate the defendant's abduction conviction and to order his discharge.

{¶ 45} The more recent cases from this court that have considered the question of whether abduction is a lesser included offense of the crime of kidnapping not only failed to cite *Maurer*, but focused instead on "abstract" comparisons of the elements of the offenses. This came about because the test set forth in *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, which addressed R.C. 2941.25, became conflated with the test set forth in *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294. R.C. 2941.25 is concerned with "allied offenses"; its intent is to *prevent* multiple punishments for the same offense.

{¶ 46} In *Deem,* the Supreme Court set forth the definitive test for determining whether, in the context of Crim.R. 31(C) and R.C. 2945.74, the same statutes that it considered in *Maurer,* an offense was a "lesser included" offense of another. R.C. 2945.74 seeks to hold a defendant *accountable* for *any* criminal conduct he may have committed.

{¶ 47} As set forth in *Deem,* an offense "may be a lesser included offense of another" if the following requirements are met: (1) the offense carries a lesser penalty than the indicted offense; (2) the "greater" offense cannot, as *statutorily defined,* ever be committed without having committed the lesser offense, as *statutorily defined*; and, (3) some element of the greater offense is not required to prove the commission of the lesser offense. (Emphasis added.) Id., paragraph three of the syllabus.

{¶ 48} Despite the wording emphasized above, it must be noted that *Deem* specifically adopted the test set forth earlier in *State v. Wilkins* (1980), 64 Ohio St.2d 382, 18 O.O.3d 528, 415 N.E.2d 303. The language of *Wilkins* indicates that with respect to a "lesser included offense" determination, statutory definitions aside, the analysis *must* include a consideration of the facts of the case.

{¶ 49} Indeed, the Supreme Court indicated in both *Deem* and *Wilkins* that in making a decision as to whether an offense constitutes a lesser included offense of the offense for which the defendant was indicted, a consideration of the evidence presented in the case is crucial. Id. at 388, 18 O.O.3d 528, 415 N.E.2d 303. The aim, according to *Deem,* was stated as follows: "Our adoption of a test which looks to *both* the *statutory elements* of the offenses involved *and the evidence supporting - such lesser offenses as presented at trial* is grounded primarily in the need for clarity in meeting the constitutional requirement that an accused have *notice of the offenses charged* against him." (Emphasis added.) Id. at 210, 533 N.E.2d 294.

{¶ 50} The foregoing quote is significant. Although the tests presented in *Rance* and *Deem* seem alike, the aims of the two statutes that the opinions considered are different. Preventing multiple punishments for the same offense clearly is a separate statutory issue from the issue of whether the offense gives

notice to the accused and is counted a "lesser included" offense of the indicted offense.

{¶ 51} This court is cognizant that the Ohio Supreme Court has expressed a contrary viewpoint in *State v. Barnes* (2002), 94 Ohio St.3d 21, 759 N.E.2d 1240. In *Barnes*, the majority opinion adhered to the position that the evidence presented in a particular case is "irrelevant" to the determination of whether an offense, as "statutorily defined," is "necessarily" included in a greater offense. Id. at 26, 759 N.E.2d 1240. However, in her concurring opinion in *Barnes*, Justice Lundberg Stratton recognized the problems inherent in the majority opinion's analysis of lesser included offenses— i.e., when the analysis focuses *strictly* on the statutory definitions involved, "confusion and inconsistency [result]." Id. at 29, 759 N.E.2d 1240.

{¶ 52} Furthermore, a method of analysis that divorces "the underlying facts of the crimes" in "completing" the analysis "beget[s] illogical results * * *. Decisionmaking in the abstract leaves trial courts to struggle with a test that *allows criminal defendants to walk away from their crimes*, despite the fact that [the crimes] fit all of the elements of the lesser included offense, unless the state indicts them separately on each potential offense." (Emphasis added.) Id. at 30–31, 759 N.E.2d 1240. In other words, it negates any accountability; the result is *opposite* the aim of R.C. 2945.74.

{¶ 53} Justice Lundberg Stratton provided a logical solution to the dilemma caused by too strict an application of the second step of the *Deem* test: return to the basic premise. Rather than "continue on the path of examining cases in a vacuum," an offense should be considered a lesser included offense "depending on the facts and circumstances of each case." Id. Thus, "in determining whether one offense is a lesser included offense of the charged offense, the potential relationship of the two offenses must be considered not only in the abstract terms of the defining statutes, but must also be considered in light of the *particular facts* of each case." (Emphasis sic.) Id.

{¶ 54} It is only when the defendant is alleged to have acted by "deception" that the "statutorily defined" elements diverge. The elements should not be "lumped" together as one in order to notify the defendant of the criminal act of which he is accused. Otherwise, the statutory purpose of R.C. 2945.74 is defeated; the offender is not accountable for committing a "lesser included" offense, in spite of the fact that the indictment accuses him of using either force or threat.

{¶ 55} In an effort to distinguish *Rance* from *Deem*, it might be helpful to return to the beginning; to the "New Ohio Criminal code," as it was called when enacted by Am.Sub.H.B. No. 511 in 1972. It is clear from the legislative commission's commentary published in June 1973 that abduction was intended to

be a lesser included offense of kidnapping, distinguished mainly by the lesser degree of potential harm to the victim.

{¶ 56} The commentary begins, "Chapter 2905. combines a number of former kidnapping offenses into one section, although the conduct which may constitute kidnapping is expanded over former law. Lesser offenses of *abduction* and unlawful restraint are defined, with lawful restraint amounting to false arrest and imprisonment. The chapter retains a child stealing offense, which provides a lesser penalty when the offender is the parent of the child involved." (Emphasis added.)

{¶ 57} "Kidnapping and Related Offenses" thus include R.C. 2905.01, which "defines the *most serious* offense *among the abduction offenses* in the code. The offense is divided into two parts, each having a different primary thrust though sharing certain common elements." The commentary continues, "The first part of the section includes an abduction or restraint of another for *any one* of several specified purposes, and it is the *offender's purpose* which determines the tenor of this part of the offense." (Emphasis added.)

{¶ 58} The second part of R.C. 2905.01, on the other hand, "also includes an abduction or restraint, and includes holding another in involuntary servitude. *In this part* of the section, however, the *offender's purpose is irrelevant* since the key factor here is the special danger in which the victim is placed." (Emphasis added.)

{¶ 59} Indeed, abduction and kidnapping have been bound together since the early common law. Blackstone defined abduction as the "taking away of a wife, child or ward, by *fraud* or open violence," and kidnapping as the "forcible *abduction* of a person from his own country to another." (Emphasis added.) 3 Blackstone Commentaries 139–141. Legal history thus describes kidnapping as the most serious of the abduction offenses. What has been bound together in law for centuries, therefore, should not be rent asunder by a too-literal application of *Deem* as conflated with *Rance*.

{¶ 60} As stated in the 1974 Committee Note, R.C. 2905.02 was *intended* by the legislature to be "a lesser included offense to kidnapping, distinguished mainly by the lesser degree of potential harm to the victim. * * * Unlike kidnapping, however, deception is not listed as one of the means to effect the removal or restraint* * *. Force or threats must be used in every case. Also, the risk of harm to the victim is less than that required in kidnapping * * *."

{¶ 61} The language used in *Maurer*, which was decided only ten years later, therefore, reflected the original legislative intent. Moreover, it is worth noting that since *Barnes* was decided, it has been cited by the Supreme Court as authority almost exclusively with reference to Crim.R. 52—i.e., "plain error"; the

*Barnes* majority was reluctant to permit the defendant to escape criminal accountability. Thus, for similar reasons, *Barnes* is less persuasive than *Maurer* on the question of the relationship of abduction to kidnapping.

{¶ 62} Even so, R.C. 2905.01 sets forth three separate and distinct kidnapping offenses, to wit: kidnapping by force, kidnapping by threat, *or* kidnapping by deception; the defendant need utilize only one of the statutorily-defined methods to be guilty of the offense. R.C. 2905.02, Abduction, contains the same elements, *but for* one—i.e., the defendant's use of "deception." Thus, if the removal or restraint is done with either force or threat, abduction fits within the "statutory definition" of kidnapping.

{¶ 63} In the instant case, *as indicted,* Kvasne was alleged to have committed the offense by threat or force. One of the statutorily defined elements of kidnapping— i.e., deception, was not named, and, therefore, was *not required* to prove the offense of abduction. *Ogletree,* 2002-Ohio-4070, 2002 WL 1821958, ¶ 8; cf., *Morgan,* 2004-Ohio-6304, ¶ 15. The next step is to examine the evidence presented to determine whether it was sufficient to support Kvasne's conviction for abduction and whether the trial court's finding of guilt is supported by the weight of the evidence. *Deem,* 40 Ohio St.3d at 210, 533 N.E.2d 294; *State v. Turner* (Dec. 12, 1985), Cuyahoga App. No. 49866, 1985 WL 4355.

{¶ 64} D.J. testified that Kvasne pushed her onto the floor, straddled her, and pinned her arms above her head. She stated that her struggles to escape were in vain; she felt "absolutely helpless" to prevent him from beating her badly, and being aware of Kvasne's angry disposition, she was afraid for her safety during the incident. She further stated that he refused to permit her to escape until she promised that she would not do anything else to defend herself. Her testimony proved that Kvasne's use of force and threat during the restraint placed her in fear, thereby violating R.C. 2905.02(A)(2).

{¶ 65} Since defense counsel was unable to impeach her credibility on these points, Kvasne's guilt of the offense of abduction was supported by both sufficient evidence and the weight of the evidence. *State v. Kleybort,* Cuyahoga App. No. 81350, 2003-Ohio-1162, 2003 WL 1091429, ¶ 35–36. Kvasne's first, second, and third cross-assignments of error, therefore, are overruled.

{¶ 66} Finally, Kvasne argues that his sentence is unsupported because the trial court failed specifically to find that he "previously served a prison term," as required by R.C. 2929.14(B). This argument also is rejected.

{¶ 67} The record reflects that Kvasne stipulated to his prior conviction in CR196438. His 1985 conviction was for the crime of voluntary manslaughter, a first-degree felony. R.C. 2903.03(B). The docket record for that case demon-

strates that he received a prison sentence of seven to 25 years and served a portion of that term before he was released.

{¶ 68} Moreover, the record in this case reflects that in sentencing Kvasne, the trial court did not rely upon any sentencing statutes that have since been declared unconstitutional in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. His sentence, therefore, contravenes neither *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, nor *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435.

{¶ 69} Accordingly, Kvasne's fifth cross-assignment of error also is overruled.

{¶ 70} Pursuant to this court's disposition of the state's assignment of error in the first case, the dismissal of count one of Kvasne's indictment is reversed, and this cause is remanded for further proceedings.

{¶ 71} In the second case, Kvasne's conviction and sentence are affirmed.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

GALLAGHER, P.J., and KILBANE, J., concur.

GALLAGHER, Presiding Judge, concurring.

{¶ 72} I concur fully with the majority opinion and analysis with respect to Kvasne's five cross-assignments of error. I concur in judgment only with respect to the state's sole assignment of error concerning the trial court's dismissal of count one of the indictment based on Section XV, Article II, Ohio Constitution ("Issue I").

{¶ 73} I concur in judgment only because I believe that the passage of Issue I collaterally damaged Ohio's domestic-violence statute under the rule of unintended consequences; however, I am compelled to concur in judgment only because of the fact, as the majority notes, that the Eighth District has previously addressed and decided this issue in *State v. Burk*, 164 Ohio App.3d 740, 2005-Ohio-6727, 843 N.E.2d 1254, and *State v. Douglas*, Cuyahoga App. Nos. 86567 and 86568, 2006-Ohio-2343, 2006 WL 1304860. I note, however, that this issue is currently under review by the Supreme Court of Ohio. See *State v. Ward*, 166 Ohio App.3d 188, 2006-Ohio-1407, 849 N.E.2d 1076, accepted on certification that a conflict exists, *State v. Ward*, 110 Ohio St.3d 1436, 2006-Ohio-3862, 852 N.E.2d 186.

KILBANE, J., concurs in the foregoing opinion.