JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant Herman Jennings appeals from his conviction after a jury found him guilty of abduction.[1]
 {¶ 2} Jennings presents one assignment of error in which he asserts his conviction is against the manifest weight of the evidence. This court disagrees. Consequently, his conviction is affirmed.
 {¶ 3} Jennings' conviction results from an incident that occurred on the winter afternoon of January 25, 2007. The victim, Lanette Rankins, provided the following description of the incident.
 {¶ 4} Rankins, a college student, was on her way to class when she received a telephone call from Jennings. Although the two were no longer romantically involved, Jennings was the father of her youngest son, and he called to request that she bring the baby over to his house to be cared for while she attended school.
 {¶ 5} When Rankins arrived, Jennings retrieved the baby from her car, took him into the house, then returned to ask her to come inside to "talk" with him. Jennings followed her through the living room into the hall, whereupon *Page 4 
Jennings "grabbed [her] by [her] shirt and by [her] neck * * * and started bamming her] head on the wall * * *."
 {¶ 6} The noise caused Jennings' stepfather and younger brother to discover what was occurring. His stepfather demanded that Jennings stop what he was doing; Jennings struggled briefly with his male relatives, until his brother began to call the police. At that point, Jennings pulled Rankins by the shirt out of the house with promises that he was "not going to hurt" her.
 {¶ 7} Jennings opened the driver's door of her car and pushed Rankins into the seat, then quickly entered the passenger side. He told her to "pull around" to a side street. When she obeyed, he "threw [the car's gearshift] in park," demanded she tell him something, and, when she couldn't adequately respond, began to "punch" her in the face a few times, striking her left eye.
 {¶ 8} Jennings was "holding on to [her] the whole time." From the transcript of Jennings' trial, it can be gleaned that Jennings' hold was, for the most part, on Rankins' shirt collar. Rankins sought to draw attention to the situation by pounding on the car's horn.
 {¶ 9} In order to prevent Rankins from continuing this activity, Jennings used the leverage of his hold on her to maneuver her out of the driver's seat; he managed to push her partially into the rear of the vehicle while he switched *Page 5 
seats with her; Rankins ended up in the passenger seat. Jennings thereupon drove the car to a more deserted area, i.e., the driveway of an abandoned house.
 {¶ 10} Once there, Jennings struck Rankins until her head was "spinning" before leaving and driving away. Eventually, he came to a red light and for some reason, released his hold on Rankins. She immediately took the opportunity to open the passenger's side door. Although Jennings attempted to stop her, she began "screaming"; in his efforts to prevent her escape, Jennings "ended up crashing into a tree." Rankins exited the car and ran.
 {¶ 11} She obtained help, and the incident was reported to the police. Rankins went to the emergency room; photographs were taken of her injuries before she received treatment.
 {¶ 12} Jennings subsequently was indicted on three counts. Counts one and two charged him with kidnapping and felonious assault with a one-year firearm specification. Count three charged him with domestic violence.
 {¶ 13} Jennings' case proceeded to a jury trial. The state presented the testimony of Rankins and two police officers, and introduced into evidence the photographs of Rankins' injuries along with her medical records. Thereafter, the trial court granted Jennings' motion for acquittal as to only the firearm specifications. *Page 6 
 {¶ 14} Jennings elected to present no evidence. Over his objection, as to count one, the trial court instructed the jury not only as to the elements of kidnapping, but also as to the elements of the lesser-included offense of abduction.
 {¶ 15} The jury ultimately found Jennings not guilty of kidnapping, but guilty of the lesser-included offense of abduction, and guilty of domestic violence. The jury found him not guilty of felonious assault. The trial court subsequently imposed concurrent terms of incarceration of three years on count one and six months on count three.
 {¶ 16} Jennings appeals his conviction for abduction with the following assignment of error.
 {¶ 17} "I. The jury's verdict of guilty to [sic] abduction was against the manifest weight of the evidence."
 {¶ 18} Jennings argues that Rankins' testimony about her failure to take any action to escape the situation was too incredible to believe; therefore, his conviction on count one should be reversed.[2]
 {¶ 19} With regard to reviewing the weight of the evidence, this court is required to consider the entire record and determine whether in resolving any *Page 7 
conflicts in the evidence, the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 20} This court must be mindful, however, that the weight of the evidence and the credibility of the witnesses are matters primarily for the jury to consider. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 21} The jury found Jennings guilty of violating R.C. 2905.02, Abduction, which states in pertinent part:
 {¶ 22} "(A) No person, without privilege to do so, shall knowingly do any of the following:
 {¶ 23} "(1) By force or threat, remove another from the place where the other person is found;
 {¶ 24} "(2) By force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear; * * *."
 {¶ 25} Rankins indicated during her testimony that, from the time that Jennings first struck her head against the wall inside his house, he had a "hold" on her. Although the way in which she was being held was not fully described in the transcript, she clearly demonstrated the hold for the jury's benefit. Rankins *Page 8 
testified Jennings released his hold on her only briefly, when he pushed her into her car.
 {¶ 26} Rankins further indicated that "everything was happening so fast" during the incident that her thought processes did not keep up with the circumstances. Indeed, she stated that, after Jennings struck her a few times in the face, she "was like way out of it"; as she described it, her "head was spinning" and she "was just scared," thus, she failed to offer any resistance. Her testimony found corroboration in the photographs admitted into evidence.
 {¶ 27} From the foregoing, this court cannot find the jury lost its way in determining Rankins gave a truthful account of the incident, and that Jennings was guilty of violating R.C. 2905.02. State v.Kvasne, 169 Ohio App.3d 167, 2007-Ohio-5235, ¶ 65, citing State v.Kleybort, Cuyahoga App. No. 81350, 2003-Ohio-1162.
 {¶ 28} Jennings' assignment of error, accordingly, is overruled.
 {¶ 29} His conviction for abduction is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's *Page 9 
conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P.J., and ANN DYKE, J., concur.
[1] The jury also found Jennings guilty of domestic violence; he does not challenge his conviction for that offense.
[2] Logically, if Rankins' testimony was not credible, it would not support Jennings' conviction on count three, either. Nevertheless, Jennings presents no argument on appeal that relates to his conviction for domestic violence.
 *Page 1