DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment issued by the Lucas County Court of Common Pleas following a jury verdict which found appellant guilty on two counts of rape. Because we conclude that the trial court did not abuse its discretion in permitting a forensic nurse to testify as an expert and did not abuse its discretion in denying appellant's motion for mistrial based upon alleged prosecutorial misconduct, we affirm.
 {¶ 2} Appellant, Tyrone Young, was indicted on two counts of rape, a violation of R.C. 2907.02(A)(1)(b) and (B). The charges stemmed from events which allegedly *Page 2 
occurred while appellant was babysitting for two young girls, then aged 18 months old and two and one-half years old. A motion to suppress statements made by appellant to police within hours after the incident was denied. The following evidence was presented at trial.
 {¶ 3} Appellant, aged 22, and his fiancé, Brooklyn E. ("Brook"), aged 20, were living in her great-grandfather's home. On Saturday, September 3, 2005, the couple returned to the home around 9:00 p.m. after a family Labor Day party at another location. Along with their own infant son, they had Brook's brother's two girls, the alleged victims in this case, and Danielle, Brook's 15 year-old cousin. Brook and appellant were to babysit her nieces for the evening.
 {¶ 4} Brook and Danielle left the house for about 45 minutes, and walked down the street to ask if Danielle could stay overnight. In the meantime, appellant was to ready the two girls for bed. Brook testified that appellant had taken care of the children before, including changing their diapers occasionally. When she, Danielle, and Danielle's 12 year-old brother returned to the house, the front door was locked and the shades were pulled. She did not view this as unusual since appellant often kept the doors locked for safety and it was late in the evening. After she knocked on the door, appellant opened it to let her in.
 {¶ 5} When she entered the house, Brook immediately noticed that the younger child was upset, crying, and trying to tell her something. The two and one-half year old was also "shaky" and tensed when she held her. At that point, Brook took appellant into *Page 3 
the bathroom and asked what he had done to her nieces. Appellant denied any wrongdoing.
 {¶ 6} While tending to the two and one-half year-old, Danielle saw blood in her diaper and reported this to Brook. At that point, Brook began to punch and hit appellant and tried to get to a phone to call family members. According to Brook, appellant kept taking away or blocking her access to phones, telling her to listen to him before she called anyone. Appellant continued to deny that he had done anything or that he would hurt the girls.
 {¶ 7} Eventually Brook was able to call her grandmother who came to the house. Several other family members came, including the children's parents. Police and emergency medical technicians arrived at the home and the children were transported to Toledo Hospital for examination and treatment. Police detectives testified as to their search and recovery of two diapers from a trash can in the house. No baby wipes were recovered from the scene.
 {¶ 8} Brook's uncle, who was also appellant's friend, testified that he drove appellant away from the house in his automobile to break up the fight with Brook. When pressed to talk about the incident, Brook's uncle said appellant did not answer, got out of the vehicle, and began walking away.
 {¶ 9} Appellant arrived at the hospital a short time later and made a statement to police investigator, Gina Lester. Appellant's statements were videotaped and then played for the jury. In that videotape, appellant's statements paralleled Brook's testimony *Page 4 
regarding the events immediately preceding her arrival at the home. He related that during the fight in the home, Brook had hit him repeatedly, injuring his face and nose, which began bleeding profusely. He denied that he had ever hurt the children in any way. He stated that he left with Brook's uncle so that everything could just calm down. Appellant stated that when he discovered which hospital the girls were taken to, he voluntarily went there to submit to evidence collection.
 {¶ 10} After continued questioning, appellant stated that while he was changing the girls' diapers, he had used a baby wipe covered finger to wipe inside their vaginal areas. He noticed that the girls were bleeding, became "freaked" and scared, and had re-changed their diapers, throwing the soiled and bloody ones in the trash. Appellant insisted, however, that he had been attempting to clean the children and was just inexperienced in handling girl babies. He repeatedly denied that he had intended to injure the girls or that there was any sexual intent.
 {¶ 11} After a break, the investigator again returned to the interview with what she referred to as "funky" glasses. She told appellant that the glasses and light allowed her to see blood and other body fluids on clothing. She told him that she could see there was blood on appellant's shorts and underwear in the crotch area. Lester also told him that it did not matter whether the girls had been penetrated by a finger or a penis. She urged appellant to tell her the truth so that the children could receive appropriate medical treatment. Appellant then stated that he had gotten an erection while he was lying next to the children on the couch but that he had never removed his penis from his pants or *Page 5 
touched it to the girls in any way. He insisted that he had used a wipe on his finger and any injuries had been unintentional.
 {¶ 12} Karen Peckinpaugh, a specially trained sexual assault nurse examiner ("SANE"), testified as an expert in forensic nursing. She stated that at the hospital she examined and completed rape kits on both children in the presence of a doctor. Peckinpaugh testified that both children had blood in their diapers and both had evidence of internal vaginal injuries, including tears and lacerations to the tissue around the vaginal opening and to the hymens within the vagina. She noted that the injuries to the hymen were caused by penetration to the inner area and injuries to the outer area were caused by "blunt force" trauma. Photos taken by Peckinpaugh to document these injuries were explained by her, published to the jury, and admitted into evidence. Peckinpaugh also observed that both children appeared to be in shock, fearful, and did not want to be touched in the genital area.
 {¶ 13} Linsey Windau, a forensic scientist from the Ohio Bureau of Criminal Identification and Investigation ("BCI"), testified that she did DNA testing on evidence submitted to the lab, including the rape kits from each child and appellant's clothing and DNA samples. She tested the both diapers found in the home and the two taken off the children at the hospital and placed into the rape kits. Blood found on the diapers was consistent with the DNA of only the children.
 {¶ 14} In addition, Windau DNA tested four stains found on appellant's boxer shorts. Two stains were from the outside of the shorts, but she could not determine *Page 6 
whether the other two had been made from the outside or inside. Two stains contained blood that was consistent with the DNA of appellant, the older child, and one other person. One of the stains was consistent only with the child. The fourth stain contained DNA consistent with that of appellant and one other person. Windau did not do DNA testing on appellant's outer shorts, stating that she was not requested to do so. The state of Ohio then rested.
 {¶ 15} The trial court denied appellant's motion for acquittal pursuant to Crim.R. 29. The jury found appellant guilty on both counts of rape. The court classified appellant as a sexually oriented offender and sentenced him to a term of life imprisonment as to each count, to be served consecutively.
 {¶ 16} Appellant now appeals from that judgment, arguing the following two assignments of error:
 {¶ 17} "1. Prosecutorial Misconduct during the closing/rebuttal argument of the State deprived Mr. Young of his right to a fair trial and reliable adjudication and the trial court erred in denying the defense motion for a mistrial in violation of his due process rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitutions and the applicable portions of the Ohio Constitution.
 {¶ 18} "2. The trial court committed prejudicial error allowing witness Kathy [sic] Peckinpaugh to be deemed [an] expert witness under Ohio R. Evid. 702 [sic] because she did not meet the qualifications of being an expert witness under Ohio Rule 702."
 I. *Page 7 {¶ 19} We will address appellant's assignments of error in reverse order. In his second assignment of error, appellant essentially contends that the trial court erred in permitting appellee's witness, Karen Peckinpaugh, to testify as an expert witness beyond the scope of her designated expertise.
 {¶ 20} The admission of evidence lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. The term "abuse of discretion" connotes more than a mere error of judgment; it implies that the trial court's attitude in reaching its judgment was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 21} A witness may testify as an expert if qualified by specialized knowledge, skill, experience, training or education regarding the subject matter, the testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons, and the testimony is based upon reliable scientific, technical, or other specialized information. Evid.R. 702. The determination of whether a witness possesses the qualifications necessary to allow his expert testimony lies within the sound and broad discretion of the trial court. State v. Clark (1995),101 Ohio App.3d 389, 411. Such determination will not be reversed by an appellate court unless the trial court clearly abused its discretion.State v. Maupin (1975), 42 Ohio St.2d 473, 479.
 {¶ 22} In this case, Kathy Peckinpaugh testified that she had received extensive training and had specialized knowledge and skills related to the examination and *Page 8 
recognition of sexual abuse injuries. This knowledge was well beyond that possessed by lay persons. In addition, her testimony was based upon reliable procedures and information utilized within the medical field. Therefore, we cannot say that the trial court abused its discretion in permitting her to testify as an expert regarding the examination and recognition of injuries and trauma to the children's' genital and vaginal areas.
 {¶ 23} Regarding appellant's argument as to the scope of her testimony, at one point in her testimony, Peckinpaugh began to give opinion testimony that the cause of the injury was consistent with something larger than a finger. This testimony was interrupted by defense counsel's objection. The trial court sustained the objection and instructed the jury to ignore the reference. Since Peckinpaugh's testimony was interrupted before she actually gave an opinion and the jury was instructed to ignore the brief reference, we cannot say that any prejudice occurred which prevented appellant from receiving a fair trial.
 {¶ 24} Accordingly, appellant's second assignment of error is not well-taken.
 II. {¶ 25} In his first assignment of error, appellant argues that the trial court erred in failing to grant a mistrial due to prosecutorial misconduct during closing argument.
 {¶ 26} The grant or denial of a mistrial rests in the sound discretion of the trial court. State v. Garner (1995), 74 Ohio St.3d 49, 59. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. See Blakemore, supra. *Page 9 
 {¶ 27} In analyzing claims of prosecutorial misconduct, the test is "whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." State v. Jones,90 Ohio St.3d 403, 420. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.' "Id., quoting Smith v.Phillips (1982), 455 U.S. 209, 219. In reviewing allegations of prosecutorial misconduct, the alleged wrongful conduct is reviewed in the context of the entire trial. See Darden v. Wainwright (1986),477 U.S. 168, 179-183. Isolated comments are not to be taken out of context and "given their most damaging meaning." State v. Hill (1996),75 Ohio St.3d 195, 204.
 {¶ 28} Ultimately, the prosecuting attorney's trial conduct can only be made a ground for error on appeal if the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19,24. Where it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed. State v. Stallings (2000), 89 Ohio St.3d 280, 286. In addition, it is presumed that a jury followed the court's instructions when deliberating in a case. See, e.g., State v. Ahmed,103 Ohio St.3d 27, 2004-Ohio-4190, at ¶ 147.
 {¶ 29} Generally, prosecutors are entitled to considerable latitude in opening statement and closing arguments. State v. Ballew (1996),76 Ohio St.3d 244, 255. In closing argument, a prosecutor may comment freely on "what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Richey (1992), *Page 10 64 Ohio St.3d 353, 362, abrogated on other grounds, State v. McGuire (1997), 80 Ohio St.3d 390, 402-403. In addition, since isolated instances of prosecutorial misconduct are generally harmless, any alleged misconduct in the closing argument must be viewed within the context of the entire trial to determine if any prejudice has occurred. See Ballew, supra; State v. Lorraine (1993), 66 Ohio St.3d 414, 420. To determine if the alleged misconduct resulted in prejudice, an appellate court should consider the following factors: "(1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." State v. Braxton (1995),102 Ohio App.3d 28, 41.
 {¶ 30} In this case, appellant alleges that the prosecutor committed misconduct by commenting on defense counsel's theories presented during the closing statement. The trial court sustained appellant's objection and ordered the jury to disregard the comment. Appellant's counsel objected to the next statement, and moved for a mistrial. The court overruled the objection and denied the motion. Yet another comment was made to which an objection was sustained. These comments primarily related to appellant's theory that he had some sort of privilege while changing the children's diapers which would excuse his touching or penetration of their vaginal areas.
 {¶ 31} In each instance, the trial court admonished the prosecutor when warranted and issued a specific curative instruction. The court also instructed the jury that anything stated by either the prosecution or defense counsel in opening or closing remarks was not to be considered as evidence. Although we do not condone any disregard for a trial *Page 11 
court's rulings, we cannot say that the outcome of the trial would have been different but for these isolated remarks, in light of evidence admitted at trial, i.e., appellant's own statements, the DNA results which indicated one child's blood on appellant's underwear, and evidence of the injuries to the children which were caused by appellant. Therefore, the trial court properly denied appellant's motion for mistrial based upon any comments made by the prosecutor during closing arguments.
 {¶ 32} Accordingly, appellant's first assignment of error is not well-taken.
 {¶ 33} The judgment of the Lucas County Court of Common Pleas is affirmed.
 {¶ 34} Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4. *Page 12 
Peter M. Handwork, J., Arlene Singer, J., George M. Glasser, J., CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.