[Cite as *State v. Smith*, 2011-Ohio-4409.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 95932 and 95933**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## GEORGE E. SMITH

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-539250 and CR-536454

**BEFORE:** Celebrezze, J., Blackmon, P.J., and Jones, J.

RELEASED AND JOURNALIZED:    September 1, 2011

**ATTORNEY FOR APPELLANT**

Michael P. Maloney
24441 Detroit Road
Suite 300
Westlake, Ohio   44145


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:   Jeffrey S. Schnatter
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113


FRANK D. CELEBREZZE, JR., J.:

{¶ 1} Appellant, George Smith, appeals his convictions for menacing by stalking and domestic violence.   Upon review of the record and relevant case law, we affirm appellant's convictions.

{¶ 2} On July 15, 2010, appellant was indicted in Case No. CR-536454 for kidnapping, felonious assault, menacing by stalking, and domestic violence in connection with events that occurred on April 9, 2009.   Appellant was indicted in a separate matter, Case No. CR-539250, for attempted murder, kidnapping, felonious assault, violation of a protective order, and menacing by stalking in connection with events that occurred from March 1, 2009 through May 11, 2010.   Appellant pled not guilty at his arraignments in these cases,

and the matters proceeded to a bench trial on June 28, 2010. The following facts were presented to the trial court.

{¶ 3} Appellant served as the program manager at Employment Connection, a reentry program that helps exoffenders find employment upon release. In October 2007, appellant hired Brandi Pope to work at Employment Connection shortly after Pope was released from prison. Initially, appellant's relationship with Pope was professional. However, by December 2007, their relationship became intimate. At all times during his relationship with Pope, appellant was married.

{¶ 4} The relationship turned violent in January 2008 and, over time, appellant's violent acts towards Pope progressively became more frequent and aggressive. At trial, the prosecution presented the testimony of Tanya Perez, who explained her knowledge of a physical altercation that occurred between appellant and Pope in March 2009. Perez testified that in March 2009, she received a phone call from Pope, who was distraught and asked her to come over. Perez testified that when she went to Pope's apartment, Pope was crying and had marks on her neck. Pope told Perez about a fight she had with appellant in her office and said that the marks on her neck were caused by appellant choking her. Perez testified that she took pictures of Pope's neck because she felt she needed to document the altercation.

**{¶ 5}** On direct examination, Pope testified about a separate altercation that occurred on April 9, 2009 while Pope was working at the Northstar Reentry Resource Center.[1] Pope testified that while she was in a meeting with a coworker, appellant went into her office and waited at her desk. When Pope entered her office, she found appellant at her desk looking through her cell phone. At that time, Pope took her cell phone from appellant and refused to answer his questions. Pope testified that as she attempted to leave her office, appellant grabbed her by the throat and pushed her against the wall, holding her by her throat for a few minutes until someone walked by, causing him to release her.

**{¶ 6}** Allecia Creighton testified that she was at work at Northstar on April 9, 2009 when she observed appellant enter the facility and go into the back office where Pope was located. Creighton testified that appellant left the facility approximately 32 minutes later. Once appellant left the facility, Creighton went back to Pope's office to check on her. When Creighton opened the door, she found Pope hysterical, crying, with her hair messed up and her belongings in disarray on the desk. When Creighton asked what had occurred, Pope stated that appellant grabbed her by her hair, choked her, and

---

[1] Northstar Reentry Resource Center is a reentry program that assists convicted felons with finding housing and employment upon their release from prison.

banged her head against the wall. Pope showed Creighton the red marks on her neck and stated, "look what he did."

{¶ 7} Marcus Bell testified that he was working at the Northstar facility on April 9, 2009. Bell learned from Creighton that Pope was upset. Bell stated that when he approached Pope, she was still distraught and explained to Bell that she had been assaulted and that appellant told her if she told anybody about their relationship, he would kill her. Bell testified that he could see a red mark on Pope's neck, and he used her cell phone to take a picture of the mark to show to the police.

{¶ 8} Nicolasa Roberts testified that she is employed at Northstar as the Coordinator. Roberts was working on April 9, 2009. She testified that she saw appellant in Pope's office. After appellant left, Roberts met with Pope in her office where she appeared to be "disheveled and an emotional mess." Pope told Roberts that she had been trying to break up with appellant, but he would not allow her to and would not leave her alone.

{¶ 9} After the incident, Pope attempted to drive home; however, as she exited the facility, appellant followed her in his vehicle. Pope testified that at one point, appellant pulled up next to her and yelled at her to pick up her cell phone. Eventually, Pope managed to elude appellant and subsequently contacted the Cleveland Police Department.

{¶ 10} Officer Michelle Wolf of the Cleveland Police Department testified that she was working on April 9, 2009 and responded to a 911 call involving a female who had been assaulted and followed in her car by a male. When Officer Wolf met with Pope, she observed bruises and scratches on Pope's neck, which she photographed. Officer Wolf testified that Pope was emotional and crying while she was being interviewed.

{¶ 11} Following the April 9, 2009 altercation, Pope obtained a protection order against appellant. However, appellant continued to interact with Pope and frequently sent her text messages. Pope testified that appellant threatened her that "protection orders don't really protect anybody."

{¶ 12} Appellant testified on his own behalf. He testified that all of the physical altercations in the relationship were initiated by Pope, and the only times he placed his hands on her were to restrain her. Additionally, appellant admitted that he violated the protection order issued against him, which banned him from contacting Pope.

{¶ 13} In CR-536454, appellant was convicted of assault, in violation of R.C. 2903.13, a misdemeanor of the first degree; menacing by stalking, in violation of R.C. 2903.211, a felony of the fourth degree; and domestic violence, in violation of R.C. 2919.25, a misdemeanor of the first degree.[2]

---

[2] In CR-536454, appellant was acquitted on the kidnapping charge pursuant to Crim.R. 29.

**{¶ 14}** In CR-539250, appellant was found not guilty of kidnapping; however, he was convicted of felonious assault, in violation of R.C. 2903.11, a felony of the second degree; violating a protective order, in violation of R.C. 2919.27, a felony of the third degree; and menacing by stalking, in violation of R.C. 2903.211, a felony of the fourth degree.[3]

**{¶ 15}** At sentencing, appellant was sentenced in CR-536454 to one year of imprisonment for the menacing by stalking charge and six months on the assault and domestic violence charges. In CR-539250, appellant was sentenced to three years of imprisonment on the felonious assault charge and one year on the violating a protective order and menacing by stalking charges. The sentences in CR-536454 and CR-539250 were arranged by the trial court so that appellant is to serve an aggregate term of four years imprisonment.

**{¶ 16}** Appellant timely appealed, raising three assignments of error for review:

**{¶ 17}** "The trial court erred in denying appellant's Criminal Rule 29 motion for acquittal when there was insufficient evidence to prove the elements of menacing by stalking."

---

[3] In CR-539250, appellant was acquitted on the attempted murder charge pursuant to Crim.R. 29.

**{¶ 18}** "The trial court erred in denying appellant's Criminal Rule 29 motion for acquittal when there was insufficient evidence to prove the elements of domestic violence."

**{¶ 19}** "The trial court erred in admitting the victim's hearsay statements."

## Law and Analysis

### I.

**{¶ 20}** For the purposes of clarity and judicial economy, appellant's first two assignments of error will be considered together. Appellant contends that the trial court erred in denying his motions for acquittal under Crim.R. 29 when there was insufficient evidence to prove the elements of menacing by stalking and domestic violence.

**{¶ 21}** After the prosecution's case in chief, appellant moved for a judgment of acquittal pursuant to Crim.R. 29, which the trial court denied. A motion for acquittal under Crim.R. 29(A) is governed by the same standard used for determining whether a verdict is supported by sufficient evidence. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386.

**{¶ 22}** An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v.*

*Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.

## Menacing by Stalking

{¶ 23} In the case at hand, appellant was convicted of two counts of menacing by stalking. R.C. 2903.11 provides, in pertinent part:

{¶ 24} "(A)(1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."

{¶ 25} Upon viewing the evidence in its totality, we find that a rational jury could have found, beyond a reasonable doubt, that appellant knowingly caused the victim to believe he would cause her mental distress, if not physical harm. In the case at bar, the transcript is replete with descriptions by Pope and others of the violence and threats that Pope was consistently subjected to from March 2009 to May 2010. Pope testified that it was the very belief that

appellant would cause her physical harm that caused her to remain in the relationship as long as she did.

{¶ 26} After the events of April 9, 2009, Pope obtained a protection order against appellant. However, appellant continued to contact Pope despite her constant demands to leave her alone. Pope testified that appellant sent her text messages that indicated he was following her and included threatening remarks, such as "protection orders don't really protect anybody." Additionally, Pope testified that appellant threatened that he "could drive by, shoot out [her] window, and nobody would know it was him," or he "could jump out of a bush when [she] was coming home and beat [her] until [she] was unrecognizable, and know nobody would know it was him." This behavior continued for months and amounted to "a pattern of conduct" that knowingly caused Pope to believe that appellant would cause her mental distress or physical harm.

## Domestic Violence

{¶ 27} Appellant was convicted of domestic violence, in violation of R.C. 2919.25(A), which provides as follows: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "Physical harm" means "any injury, illness, or other

physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶ 28} In challenging his conviction for domestic violence, appellant contends that the prosecution failed to present sufficient evidence that Pope was a "family or household member." R.C. 2919.25(F)(1)(a)(i) defines "family or household member" in relevant part as a "spouse, a person living as a spouse, or a former spouse of the offender[.]" "Person living as a spouse" is further defined as "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C. 2919.25(F)(2).

{¶ 29} "The offense of domestic violence * * * arises out of the relationship of the parties rather than their exact living circumstances." *State v. Williams*, 79 Ohio St.3d 459, 1997-Ohio-79, 683 N.E.2d 1126, at paragraph one of the syllabus. In *Williams*, the Ohio Supreme Court determined that the essential elements of "cohabitation" with respect to R.C. 2919.25 are: "(1) sharing of familial or financial responsibilities and (2) consortium." Id. at paragraph two of the syllabus.

{¶ 30} The *Williams* court further stated: "Possible factors establishing shared familial or financial responsibilities might include provisions for

shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations. These factors are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact ." Id. at 465.

{¶ 31} In the case at hand, appellant shared a sexual relationship with Pope over a three-year period. Pope testified that during their relationship, appellant had keys to her apartment and came and went as he pleased. The record reflects that appellant kept personal items at Pope's apartment and assisted Pope financially, including paying for her prescriptions, two medical procedures, and utility and cell phone bills when she needed it. Additionally, appellant shared a relationship with Pope's son and was his emergency contact at her son's day care facility. Pope testified that she depended on appellant to help her with family matters.

{¶ 32} Based on the testimony adduced at trial, it is clear that Pope and appellant shared both family and financial responsibilities, satisfying the first prong of the *Williams* test, and remained intimate throughout their relationship, satisfying the consortium prong. Therefore, we find that the prosecution presented sufficient evidence that Pope was a "family or household member."

**{¶ 33}** Further, the state presented sufficient evidence that appellant caused Pope physical harm through the testimony of Pope and the numerous witnesses who testified on her behalf. Viewing this evidence in a light most favorable to the state, we find that a rational trier of fact could find the essential elements of domestic violence proven beyond a reasonable doubt.

**{¶ 34}** Appellant's first and second assignments of error are overruled.

## II.

**{¶ 35}** In his third assignment of error, appellant argues that the trial court erred by admitting into evidence statements made by Pope to Creighton, Roberts, Bell, and Perez.

**{¶ 36}** A trial court enjoys broad discretion in the admission and exclusion of evidence. That decision will not be reversed absent a clear abuse of discretion that materially prejudices the objecting party. *State v. McCray* (1995), 103 Ohio App.3d 109, 658 N.E.2d 1076.

**{¶ 37}** Hearsay is an out-of-court statement, offered in evidence to prove the truth of the matter asserted. Evid.R. 802(C). Hearsay statements are generally not admissible. Evid.R. 802. However, when a declarant makes a statement while under the stress of excitement caused by a startling event or condition, that statement may be an admissible "excited utterance," one of the exceptions to the hearsay rule. Evid.R. 803(2); *State v. Fowler*, Cuyahoga App. No. 94798, 2011-Ohio-717.

**{¶ 38}** For an alleged excited utterance to be admissible, four prerequisites must be satisfied: (1) an event startling enough to produce a nervous excitement in the declarant, (2) the statement must have been made while still under the stress of excitement caused by the event, (3) the statement must relate to the startling event, and (4) the declarant must have personally observed the startling event. Id. citing *State v. Brown* (1996), 112 Ohio App.3d 583, 601, 679 N.E.2d 361.

**{¶ 39}** Pope's statements to each of the four witnesses satisfy the criteria outlined in *Fowler*. Her statements to Creighton, Roberts, and Bell were made immediately after she was assaulted in her office and while she was under distress from that assault. Perez testified that when Pope told her about appellant choking her in March 2009, she was "super distraught."

**{¶ 40}** The testimony adduced at trial clearly demonstrated that each of the statements admitted into evidence were made after Pope was assaulted by appellant, an event startling enough to produce a nervous utterance; that Pope was still under stress caused by the assault; that the statements related to the assaults; and that Pope had personal knowledge of the startling event because she was the victim of the assault. Accordingly, we conclude that Pope's statements to the witnesses were admissible pursuant to Evid.R. 803 as excited utterances.

**{¶ 41}** Appellant's third assignment of error is overruled.

Appellant's convictions are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

PATRICIA A. BLACKMON, P.J., and
LARRY A. JONES, J., CONCUR