[Cite as *State v. Simmons*, 2011-Ohio-6074.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96208**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DANIEL SIMMONS

DEFENDANT-APPELLANT

**JUDGMENT:**
**AFFIRMED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-538775

**BEFORE:** Stewart, J., Blackmon, P.J., and Cooney, J.

**RELEASED AND JOURNALIZED:**    November 23, 2011

**ATTORNEY FOR APPELLANT**

Paul Mancino, Jr.
75 Public Square, Suite 1016
Cleveland, OH    44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By:    T. Allan Regas
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, OH    44113

MELODY J. STEWART, J.:

{¶ 1}  Defendant-appellant, Daniel Simmons, appeals from convictions for felonious assault with notice of prior conviction and repeat violent offender specification, domestic violence, and abduction.  He complains that:  (1) exculpatory evidence was not preserved by the state, (2) due process was denied when his motion to dismiss for lack of a speedy trial was denied, (3) the testimony of an expert witness was improperly admitted, (4) his convictions were based upon insufficient evidence and were against the manifest weight of the evidence, (5) his sentence subjected him to multiple punishments for a single crime, (6) his convictions for felonious assault and domestic violence should have been merged, (7) his convictions for felonious assault and abduction should have been merged,

and (8) his right to due process was denied because restitution was contested but nevertheless granted without a hearing. For the reasons that follow, we affirm.

{¶ 2} Evidence presented at Simmons's bench trial established that Simmons and the victim, Marley Kichinka, had been dating for approximately two years and had lived together for about a year. Anthony Davis, a friend of Simmons, testified that on the night of June 4, 2010, the two were drunk when they visited his home prior to their stop at a local bar. Kichinka and Simmons went to the bar for ten cent beer night and began to argue after consuming a few beers.

{¶ 3} Simmons and Kichinka left the bar approximately four hours later and were en route to the home of Simmons's friends, Seth and Gina, when the arguing resumed. The friends overheard the commotion outside of their residence and asked Kichinka and Simmons to leave. The two then headed to their apartment.

{¶ 4} The altercation became physical when they arrived home. Kichinka testified that Simmons struck her in the face, knocked her down, then dragged her into their apartment where he continued to beat her, and then choked her until she became unconscious. Kichinka further testified that when she regained consciousness, Simmons took her shoes and cell phone and forcibly restrained her from leaving the apartment.

{¶ 5} Kichinka managed to escape the apartment the next morning and made her way to a local laundromat. Simmons followed her to the establishment and attempted to convince her to leave with him. An attendant at the laundromat, Rebecca Szilagyi, testified that she observed Kichinka's facial injuries and tense demeanor and asked

Simmons to leave. Kichinka called her brother-in-law to pick her up and went to the hospital for treatment.

{¶ 6} Simmons was found guilty and sentenced as follows: three years for felonious assault and two years for abduction to be served consecutively, and six months for domestic violence to be served concurrently with the other charges, for a total of five years in prison.

{¶ 7} In his first assignment of error, Simmons claims that the state's failure to preserve a telephone recording of a conversation that he had with Kichinka during his incarceration amounted to a denial of due process, since the recording contained exculpatory evidence.

{¶ 8} The recording was offered by the state in support of its motion to revoke Simmons's communication privileges because he had repeatedly attempted to contact the victim in violation of a no contact order. In addition to providing the court with the recording, the state provided phone logs from the Cuyahoga County Jail that indicated Simmons had attempted to contact Kichinka 229 times over a three-week period while he was incarcerated. The court granted the motion in part by prohibiting Simmons from contacting anyone other than his family and his attorney.

{¶ 9} A defendant's due process rights are violated if the prosecution fails to preserve materially exculpatory evidence. *State v. Lewis* (1990), 70 Ohio App.3d 624, 634, 591 N.E.2d 854. However, failure to preserve evidence that is merely potentially

useful does not amount to a due process violation unless bad faith is shown. *Arizona v. Youngblood* (1988), 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281.

{¶ 10} Evidence is materially exculpatory only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *State v. Johnston* (1989), 39 Ohio St.3d 48, 529 N.E.2d 898, paragraph five of the syllabus. "The burden is on the defendant to show the exculpatory nature of [unavailable] evidence." *State v. Sowell*, 8th Dist. No. 90732, 2008-Ohio-5875, ¶28.

{¶ 11} Simmons fails to demonstrate that the contents of this single phone conversation was materially exculpatory or, for that matter, how the recording would have been potentially useful to his defense. Furthermore, Simmons has not met his burden of demonstrating that the results of his trial would have been different had the recording or its contents been available to him, so his first assigned error is overruled.

{¶ 12} In his second assignment of error, Simmons contends that the denial of his motion to dismiss for lack of a speedy trial constitutes a deprivation of due process.

{¶ 13} Criminal defendants are guaranteed the right to a speedy trial pursuant to the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. Ohio's speedy trial statute provides that a person against whom a felony charge is pending shall be brought to trial within 270 days after arrest. Each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. R.C. 2945.71(E). Therefore, an individual who is incarcerated must be

brought to trial within 90 days. *State v. Benson* (1985), 29 Ohio App.3d 321, 322, 505 N.E.2d 987.

**{¶ 14}** "In accordance with the speedy trial provisions, the statutory time period begins to run on the date the defendant is arrested; however, the date of arrest is not counted when computing the time period." *State v. Shabazz*, 8th Dist. No. 95021, 2011-Ohio-2260, ¶24. Also, the speedy trial time may be tolled by several events; such as, discovery motions, motions for continuances, motions to revoke privileges, and competency referrals. R.C. 2945.72.

**{¶ 15}** "The standard of review of a speedy trial issue is to count the days of delay chargeable to either side and determine whether the case was tried within the time limits * * *." *State v. Dunbar*, 8th Dist. No. 87317, 2007-Ohio-3261, ¶160-61, citing *State v. Blumensaadt*, 11th Dist. No. 2000-L-107, 2001-Ohio-4317.

**{¶ 16}** In this instance, the statutory period for Simmons's right to a speedy trial began to run on June 15, 2010, the day following his arrest. Since he was being held in jail on the pending charges, he was required to be tried on or before September 13, 2010, barring any tolling events. His trial began on November 15, 2010, 153 days following his arrest. However, there were several tolling events that extended the 90-day period for speedy trial.

**{¶ 17}** On July 16, 2010, the state filed its motion to revoke defendant's communication privileges. A hearing on the motion took place three days later on July

19, 2010. This motion, "occasioned by the * * * improper act of the accused," tolled the speedy trial time. R.C. 2945.72(D).

{¶ 18} Also, on July 19, 2010, counsel for Simmons stated to the court that his client was under "significant stress," and requested that he be referred to the court psychiatric clinic to ascertain his competency to stand trial. On August 9, 2010, the court ordered Simmons to undergo a 20-day inpatient competency evaluation since he had refused to cooperate with the clinic psychiatrist. On September 10, 2010, a competency hearing was held, and the court found Simmons competent to proceed to trial. These events tolled the speedy trial statute for 53 days. R.C. 2945.72(B) (time tolled while determining if defendant is competent to stand trial).

{¶ 19} The record indicates that on October 15, 2010, Simmons filed a demand for discovery and motion for continuance. These were also tolling events pursuant to R.C. 2945.72(E) and (H). See, also, *State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159, syllabus. Five days elapsed before a hearing was held on the motions.

{¶ 20} On October 20, 2010, a hearing was held where the state informed the court that it was prepared to proceed to trial. However, newly appointed counsel for Simmons requested a continuance in order to further interview witnesses. The court granted this request and set trial for November 3, 2010. This motion tolled the running of the speedy trial clock for 14 days. R.C. 2945.72(H).

{¶ 21} Finally, on November 3, 2010, the court rescheduled the trial to November 8, 2010, since it was engaged in trial in another case. "Pursuant to R.C. 2945.72(H) a court

may grant a continuance upon its own initiative as long as it is reasonable." *State v. King*, 70 Ohio St.3d 158, 162, 1994-Ohio-412, 637 N.E.2d 903.

**{¶ 22}** The speedy trial time was tolled by Simmons on four occasions for a total of 75 days, and by the court on one occasion for five days. With these tolling events, 73 days passed between his arrest and the commencement of his trial.

**{¶ 23}** Simmons's second assignment of error is overruled.

**{¶ 24}** In his third assignment of error, Simmons claims that his right to due process was violated when sexual assault nurse examiner, Elizabeth Petitt, testified for the state as an expert witness.

**{¶ 25}** "A ruling concerning the admission of expert testimony is within the broad discretion of the trial court and will not be disturbed absent an abuse of discretion." *Scott v. Yates*, 71 Ohio St.3d 219, 221, 1994-Ohio-462, 643 N.E.2d 105.

**{¶ 26}** A court receives expert testimony to "assist the trier of fact in determining a fact issue or understanding the evidence." *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 611, 1998-Ohio-178, 687 N.E.2d 735. A trial court serves as a gatekeeper to ensure that the admissibility of an expert's testimony meets threshold requirements of relevance and reliability. *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469; Evid.R. 702(C). An expert witness must possess knowledge in the relevant subject area that is superior to an ordinary person, and may be "qualified as an expert by specialized knowledge, skill, experience, training, or education

regarding the subject matter of the testimony." Evid.R. 702(A) and (B). The expert's opinion must be based upon scientifically valid principles. Evid.R. 702(C).

{¶ 27} In this instance, Petitt was called by the hospital at Kichinka's request to conduct a domestic violence examination. Prior to offering an opinion about her observations and the treatment she rendered, Petitt testified that she was a board-certified family nurse practitioner, a registered nurse, a certified forensic nurse examiner, held dual masters degrees in education and as a family nurse practitioner, and had approximately 15 years of experience in the field of nursing. She testified that, her examination of Kichinka revealed injuries consistent with a beating, and that she observed petechia[1] on the victim's face and neck that were indicative of strangulation.

{¶ 28} Simmons protests that Petitt's testimony exceeded her ability and qualifications as an expert witness, and that her opinion was based only upon her observations and not scientific data. He also complains that Petitt incorrectly testified that a CAT scan was performed on Kichinka, and that the examining physician's report did not corroborate her perception and opinion concerning petechia.

{¶ 29} Petitt's testimony was within the scope of her expertise because she is a trained medical professional whose qualifications are in areas of assault and domestic violence injuries. Her testimony concerning the relationship between petechia and asphyxiation helped the trier of fact to understand the severity and duration of the choking

---

[1] Petechia are "minute reddish or purplish spot[s] containing blood that appears in skin or mucous membrane as a result of localized hemorrhage." http://dictionary.reference.com/browse/petechiae (last accessed November 10, 2011)

episode inflicted upon the victim. See Evid.R. 702(B); see, also, *State v. Stillman*, 5th Dist. No. 04CAA07052, 2004-Ohio-6974 (expert testimony concerning strangulation by sexual assault nurse examiner allowed). Nevertheless, these qualifications alone do not establish the legal reliability of her opinions.

{¶ 30} In order to establish the reliability of expert testimony, courts focus on how the experts arrived at their conclusions. *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, ¶16. In *State v. Young*, 6th Dist. No. L-06-1106, 2007-Ohio-754, a sexual assault nurse examiner was found to be qualified as an expert witness "regarding the examination and recognition of injuries and trauma" based not only upon her stellar educational qualifications, but also because "her testimony was based upon reliable procedures and information utilized within the medical field." Id. at ¶22.

{¶ 31} Here, Petitt testified that her notes were in fact part of the medical record, and her testimony was partly based upon observations noted during Kichinka's treatment. See Staff Notes to Evid.R. 703 (expert testimony may be based upon facts observed or data collected upon examination or testing). Petitt's opinions do not need a scientific foundation since Evid.R. 703 allows an expert to render an opinion based wholly on perceptions. *State v. Solomon* (1991), 59 Ohio St.3d 124, 126, 570 N.E.2d 1118.

{¶ 32} Petitt's testimony was properly admitted by the trial court, and accordingly, Simmons's third assignment of error is overruled.

{¶ 33} In his fourth assigned error, Simmons claims that there was insufficient evidence to convict him of felonious assault.

{¶ 34} When reviewing a claim that there is insufficient evidence to support a criminal conviction, we view the evidence in a light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. A conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

{¶ 35} Felonious assault, defined by R.C. 2903.11(A)(1) commands that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *." "Serious physical harm" is defined as "harm that carries a substantial risk of death * * * permanent incapacity * * * temporary substantial incapacity * * * permanent disfigurement * * * or temporary serious disfigurement." R.C. 2901.01(A)(5)(b), (c), and (d).

{¶ 36} Simmons argues that the element of serious physical harm was not proven beyond a reasonable doubt. He contends that the trial court's finding that he strangled Kichinka was unsupported because the photographs of her injuries admitted into evidence did not clearly demonstrate the presence of petechia. He also argues that the acts to restrain Kichinka were not committed for the purpose of inflicting serious physical harm.

{¶ 37} In *State v. Smith*, 9th Dist. Nos. 23468 and 23464, 2007-Ohio-5524, sufficient evidence of serious physical harm to support a conviction for felonious assault was established with only the testimony of the victim and an emergency room physician.

In *Smith*, the victim testified that she almost lost consciousness due to the defendant violently choking her. Id. at ¶27. The treating emergency room physician testified that he observed "a petechial rash on the upper portion of [the victim's] face and eyes," and that her injuries were consistent with extreme choking pressure that constituted a "life-threatening act." Id. The court stated that "[i]t is hard to fathom how choking a victim to the brink of unconsciousness does not * * * amount to a 'substantial' risk of death." Id.

{¶ 38} Similar to *Smith*, the testimony of Kichinka and Petitt establishes the element of serious physical harm. Additionally, the court found distinct support for this element when it considered the photographic evidence of the severe swelling and bruising in and around Kichinka's left eye to constitute a temporary serious disfigurement. See *State v. Plemmons-Greene,* 8th Dist. No. 92267, 2010-Ohio-655, ¶ 29 (photograph of black eye, swelling, and bruising, in conjunction with testimony, sufficient for a finding of "serious physical harm").

{¶ 39} Simmons's fourth assignment of error is overruled.

{¶ 40} Simmons, in his fifth assignment of error, argues that he was deprived of due process when the court overruled his motion for judgment of acquittal for kidnapping and found him guilty of a lesser offense of abduction.

{¶ 41} Count one of Simmons's indictment charges him with kidnapping pursuant to R.C. 2905.01(A)(3). Kichinka testified that after the beating ceased, Simmons took her shoes and cell phone and repeatedly pushed her down when she attempted to leave.

During closing argument, counsel for Simmons requested the court to "consider instructions for deliberation as to the lesser included of kidnaping [sic] of abduction to the charge of kidnaping * * *." The trial court found that the victim was not restrained for the purpose of terrorizing or inflicting serious physical harm. As a result, the court ruled that the state had not proven the crime of kidnapping, but had met the burden of proving the crime of abduction beyond a reasonable doubt.

{¶ 42} Abduction, pursuant to R.C. 2905.02(A)(2), states that "[n]o person shall * * * [b]y force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear." "Fear" is defined as "a distressing emotion aroused by impending danger." Websters Unabridged Dictionary (2 Ed. 1998) 724, 1960. Abduction is a lesser included offense of kidnapping. *State v. Maurer* (1984), 15 Ohio St.3d 239, 271, 473 N.E.2d 768.

{¶ 43} Simmons argues that Kichinka was not restrained and that she could not have possibly been placed in fear after the assault because she went to sleep afterwards. He also contends that the trial court's ruling is contradictory and cannot be reconciled since it found that while Kichinka was not restrained for the purposes of being "terrorized," she was nevertheless placed in "fear."

{¶ 44} In *State v. Kvasne*, 169 Ohio App.3d 167, 2006-Ohio-5235, 862 N.E.2d 171, the victim "testified that [the defendant] pushed her onto the floor, straddled her, and pinned her arms above her head, * * * that her struggles to escape were in vain; she felt 'absolutely helpless' to prevent him from beating her badly, and being aware of [the

defendant's] angry disposition * * * was afraid for her safety during the incident." Id. ¶64. This court found that the defendant's "use of force and threat during the restraint placed her in fear, thereby violating R.C. 2905.02(A)(2)." Id.

**{¶ 45}** The trial court found that Kichinka's testimony supported being abducted. She repeatedly stated that she felt she was not free to leave, and feared that Simmons would harm her further if she attempted to do so. Kichinka felt compelled to remain in the apartment because she feared additional harm, and her apprehension was not unreasonable under the circumstances.

**{¶ 46}** The trial court did not err by finding Simmons guilty of abduction. Simmons's fifth assignment of error is overruled.

**{¶ 47}** In his sixth assignment of error, Simmons claims that the court made an unconstitutional amendment to the indictment because abduction is not a lesser included offense of kidnapping as alleged in the indictment.

**{¶ 48}** Courts are permitted to, "at any time before, during or after a trial amend [an] indictment * * * in respect to * * * any variance with the evidence, provided no change is made in the name or identity of the crime charged." Crim.R. 7(D).

**{¶ 49}** "The amendment of a charge 'in an indictment to a lesser included offense does not change the name or identity of the crime charged.'" *Cleveland v. Smith,* 8th Dist. No. 81778, 2009-Ohio-3594, ¶6, quoting *State v. Watson*, 5th Dist. No. 2004CA00286, 2005-Ohio-1729, ¶10. "[I]f lesser offenses are included within the offense charged, the defendant may be found * * * guilty of * * * a lesser included

offense." Crim.R. 31(C). Abduction is a lesser included offense of kidnapping. *State v. Roman*, 8th Dist. No. 92743, 2010-Ohio-3593, ¶5; *State v. Manus,* 8th Dist. No. 94631, 2011-Ohio-603, ¶27.

**{¶ 50}** Simmons's indictment was properly amended to a lesser included offense of the crime charged in order to conform to the evidence presented at trial. Therefore, we overrule his sixth assignment of error.

**{¶ 51}** Simmons complains in his seventh assigned error that his conviction for domestic violence amounts to a denial of due process, since the state failed to prove all of the elements of the offense. Specifically, he claims that the court did not find that there were conjugal relations. Therefore, he asserts that the element of consortium needed to prove cohabitation was not established in order to sustain a conviction for domestic violence.

**{¶ 52}** Domestic violence, pursuant to R.C. 2919.25(A), states that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." "Family or household member" is defined as "[a] spouse, a person living as a spouse, or a former spouse of the offender." R.C. 2919.25(F)(1)(i). The phrase "'[p]erson living as a spouse' means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender * * *." R.C. 2919.25(F)(2)(b).

**{¶ 53}** "The essential elements of 'cohabitation' are (1) sharing of familial or financial responsibilities and (2) consortium." *State v. Williams*, 79 Ohio St.3d 459,

1997-Ohio-79, 683 N.E.2d 1126, paragraph one of the syllabus. "Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations." *State v. Smith*, 8th Dist. Nos. 95932 and 95933, 2011-Ohio-4409, ¶30, quoting *Williams*, 79 Ohio St.3d at 465. In *Williams*, testimony from the victim that established shared financial responsibilities, society, and conjugal relations with the defendant, even while living separately, sufficed as proof of consortium. Id. at 465.

{¶ 54} The testimony of Kichinka and Simmons was sufficient to establish conjugal relations as well as cohabitation. Kichinka testified that she and Simmons lived together for about a year and a half, that they had been intimate during that period of time, and that she purchased items for Simmons because she loved him. Simmons testified that Kichinka was his girlfriend, that they lived together for about two years and were involved romantically, and that he paid for many of their living expenses.

{¶ 55} Evidence of conjugal relations standing alone is not dispositive to prove domestic violence. Clearly however, the above testimony establishes society, affection, aid, friendship, and cooperation as well as conjugal relations. Consequently, Simmons's seventh assignment of error is overruled.

{¶ 56} Simmons's eighth and ninth assignments of error will be addressed together. In his eighth assignment of error, Simmons argues that felonious assault and domestic violence are allied offenses of similar import and, therefore, it was improper for the trial court to impose separate sentences. Simmons complains in his ninth assignment of error

that his convictions for felonious assault and abduction were part and parcel of the same activity, and therefore should have been merged.

{¶ 57} "R.C. 2941.25, Ohio's allied offenses statute, protects against multiple punishments for the same criminal conduct in violation of the Double Jeopardy Clauses of the United States and Ohio Constitutions." *State v. Sanchez*, 8th Dist. Nos. 93569 and 93570, 2010-Ohio-6153, ¶49, citing *State v. Moore* (1996), 110 Ohio App.3d 649, 653, 675 N.E.2d 13. "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. 2941.25(A). Furthermore, "[w]hen a defendant has been found guilty of offenses that are allied offenses, R.C. 2941.25 prohibits the imposition of multiple sentences." *State v. Damron*, 129 Ohio St.3d 86, 2011-Ohio-2268, 950 N.E.2d 512, ¶17.

{¶ 58} The conduct of the accused must be considered when determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25. *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, syllabus. Courts are not tasked with "perform[ing] any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger." Id. at ¶47. "[T]he question is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the

offenses are of similar import." Id. at ¶48. "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' * * * If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." Id. at ¶49-50, quoting *State v. Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶50.

{¶ 59} Pursuant to R.C. 2941.25(B), offenses will not merge if a court finds that the commission of one offense will never result in the commission of the other, if the offenses are carried out separately, or if the defendant has a separate animus for each offense. Id. at ¶51.

{¶ 60} Simmons argues that the separate sentence for domestic violence is erroneous since the count of domestic violence was an allied offense to felonious assault and should have been merged. The trial court, however, determined that Simmons committed two distinct crimes and had a separate animus for each.

{¶ 61} The court found that Simmons first committed felonious assault and caused serious physical harm to Kichinka when he struck her and blackened her eye, resulting in a temporary serious disfigurement. Simmons's later actions of hitting, chocking, and dragging Kichinka constituted a separate instance of domestic violence. The trial court was correct in its determination that domestic violence and felonious assault were independent offenses in this instance.

{¶ 62} R.C. 2905.02(A) defines abduction and provides, in pertinent part that "[n]o person shall * * * (2) By force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear." A finding of "serious physical harm" is a prerequisite to a conviction for felonious assault, but is not an element of abduction. R.C. 2903.11(A).

{¶ 63} Testimony established, and the court noted, that Simmons abducted Kichinka only after beating her, and also that these distinct actions were carried out in order to restrain Kichinka, and not to inflict serious bodily harm. Therefore, the offenses here were carried out at different times and with a separate animus.

{¶ 64} Assignments of error eight and nine are overruled.

{¶ 65} In his final assignment of error, Simmons claims that he was denied due process when the court granted restitution to the victim without holding a hearing, even though he contested restitution.

{¶ 66} An award of restitution is reviewed using an abuse of discretion standard. *State v. Mobley-Melbar*, 8th Dist. No. 92314, 2010-Ohio-3177, ¶37. R.C. 2929.18(A)(1) states, in pertinent part: "[i]f the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim or survivor disputes the amount." See, also, *State v. Jarrett*, 8th Dist. No. 90404, 2008-Ohio-4868, ¶18 (a trial court is required to hold a separate hearing when the defendant "object[s] to restitution or dispute[s] the amount requested by the victims").

{¶ 67} "[P]rior to imposing restitution, a trial court must determine the amount of restitution to a reasonable degree of certainty, ensuring that the amount is supported by competent, credible evidence." *State v. Waiters*, 191 Ohio App.3d 720, 2010-Ohio-5764, 947 N.E.2d 710, ¶17, citing *State v. Warner* (1990), 55 Ohio St.3d 31, 69, 564 N.E.2d 18. Economic loss may be demonstrated by introducing documentary and/or testimonial evidence. Id. at ¶18.

{¶ 68} At the sentencing hearing, the state requested an order for Simmons to pay restitution to Kichinka for her medical bills. Counsel for Simmons objected to any restitution beyond services rendered to Kichinka for her injuries related to the case at bar. No testimony was offered to support the request for restitution since Kichinka was not present. Instead, the state presented an invoice from Fairview Hospital that itemized emergency services rendered to Kichinka. This invoice is not a part of the record before us. Nevertheless, the court noted that the dates and times of treatment corresponded to Kichinka's previous testimony, and stated that it had "no reason to believe that isn't the appropriate bill for the medical records that were [previously] submitted here."

{¶ 69} Simmons, however, now argues that the medical records indicate that insurance coverage existed, since the record contains a coded statement from Fairview Hospital dated June 5, 2010 with a notation indicating possible insurance coverage. This argument was not raised below, so we decline to consider it. Furthermore, the trial court determined the amount of restitution to a reasonable degree of certainty by scrutinizing the dates and services listed on the hospital invoice. The invoice was competent and credible

evidence. Simmons objected only to restitution exceeding medical treatment required for Kichinka's injuries that resulted from the charged offenses. There is no indication that the invoice contained charges for any treatment other than what was required for Kichinka's injuries. The trial court, therefore, complied with defense counsel's request to limit the restitution.

{¶ 70} Simmons's final assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
MELODY J. STEWART, JUDGE

PATRICIA ANN BLACKMON, P.J., and
COLLEEN CONWAY COONEY, J., CONCUR